## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **GERALD FARMER, POMPEY HICKS,** and **ANTWON WILLIAMS, individually,** and on behalf of all others similarly situated, | : : : : : | **CIVIL ACTION** |
| **Plaintiffs,** | : | **NO. 08CV3962** |
| v. | : : | **JUDGE AMY J. ST. EVE** **MAGISTRATE JUDGE MARIA VALDEZ** |
| **DIRECTSAT USA, LLC,** *et al.*, **Defendants.** | : : : | |

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

---

Butler Rubin Saltarelli & Boyd

Jason S. Dubner (ARDC# 06257055)
Ursula A. Taylor (ARDC # 6287522)
70 West Madison Street, Suite 1800
Chicago, IL 60602
(312) 444-9660

Elliott Greenleaf & Siedzikowski, P.C.

Eric J. Bronstein
Colin D. Dougherty
Gregory S. Voshell
Union Meeting Corporate Center
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000

Counsel for Defendants

DATED: June 28, 2010

## TABLE OF CONTENTS

I. INTRODUCTORY STATEMENT ...................................................................................1

II. FACTUAL BACKGROUND ........................................................................................2

    A. DirectSat's Formal Wage and Overtime Policy..............................................2

    B. The Named Plaintiffs' Testimony Demonstrates that Their Claims are
       Inherently Individual in Nature.........................................................................4

III. STANDARD OF REVIEW ..........................................................................................6

IV. ARGUMENT.................................................................................................................8

    A. Plaintiffs' State Law Claims are Preempted by the FLSA ..............................9

    B. Plaintiffs Have Not Presented Any Admissible Evidence to Support the
       Claims of the Absent Class Members, Mandating Judgment as to All Claims
       Asserted by Absentee Class Members ..........................................................13

        1. Plaintiffs' Cannot Overcome Their Evidentiary Shortcomings with
           Representational Proofs because Their Claims and Theories of Liability
           Derive from Individual Experiences Rather than Class-Wide Application...........14

        2. Due to the Individuality of the Claims Plaintiffs' Proffer, at Most, Plaintiffs
           Have Offered Evidence Only as to the Named Plaintiffs and Such Evidence
           Cannot be Extrapolated to the Absent Class Members.........................................16

        3. At the Least, because there is No Testimonial Evidence from Any Individual
           Working at the Algonquin Location, Summary Judgment as to All
           Individuals Working at that Location is Mandated...............................................19

    C. The Named Plaintiffs' FLSA Claims and All Plaintiffs Illinois Wage Claims
       Fail because Plaintiffs have Failed to Proffer Any Evidence Sufficient to
       Demonstrate the Number of Hours They Allegedly Worked .......................19

V. CONCLUSION...............................................................................................................22

# TABLE OF AUTHORITIES

## Case Law

*Alexander v. Vesta Ins. Group, Inc.,*
  147 F. Supp. 2d 1223 (N.D. Ala. 2001) ................................................................. 11

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ................................................................. 6, 7, 16, 17

*Anderson v. Sara Lee Corp.,*
  508 F.3d 181 (4th Cir. 2007) ................................................................. 9, 10, 11, 12

*Bayles v. Am. Med. Resp. of Colo.,*
  950 F. Supp. 1053 (D. Colo. 1996) ................................................................. 15

*Chen v. St. Beat Sportswear, Inc.,*
  364 F. Supp. 2d 269 (E.D.N.Y. 2005) ................................................................. 11

*DeWeese v. Nat'l R.R. Passenger Corp. (Amtrak),*
  2009 WL 4912134 (3d Cir. 2009) ................................................................. 9

*Flores v. Albertson's, Inc.,*
  2003 WL 24216269 (C.D. Cal. Dec. 9, 2003) ................................................................. 11

*Fry v. Sheahan,*
  2009 WL 2496575 (N.D. Ill. Aug. 12, 2009) ................................................................. 17

*Gatto v. Mortgage Specialists of Illinois,*
  442 F. Supp. 2d 529 (N.D. Ill. 2006) ................................................................. 7, 21

*Grochowski v. Phoenix Construction,*
  318 F.3d 80 (2d Cir. 2003) ................................................................. 21

*Haynes v. Tru-Green Corp.,*
  507 N.E.2d 945, 154 Ill.App.3d 967 (Ill. App. Dist. 4 1987) ................................................................. 19, 20

*Hoagland v. Town of Clear Lake, Ind.,*
  415 F.3d 693, 696 (7th Cir. 2005) ................................................................. 9

*Hughes v. Cook,*
  452 F. Supp. 2d 832 (W.D. Tenn. 2006) ................................................................. 7, 16

*Johnson v. Big Lot Stores, Inc.,*
  561 F. Supp. 2d 567 (E.D. La. 2008) ................................................................. 15

*Johnston v. Davis Sec., Inc.,*
  217 F. Supp. 2d 1224 (D. Utah 2002).................................................................. 11, 12, 13, 14

*Kendall v. City of Chesapeake,*
  174 F.3d 437 (4th Cir. 1989) ...................................................................................... 10

*Lee v. Vance Executive Protection, Inc.,*
  7 F. App'x 160 (4th Cir. 2001) ................................................................................... 20

*Lopez v. Flight Servs. & Sys., Inc.,*
  2008 WL 203028 (W.D.N.Y. Jan. 23, 2008) .......................................................... 11

*Moeck v. Gray Supply Corp.,*
  2006 WL 42368 (D.N.J. Jan. 6, 2006) ..................................................................... 11

*Petras v. Johnson,*
  1993 WL 228014 (S.D.N.Y. Jun. 22, 1993) ...................................................... 10, 11

*Reed v. County of Orange,*
  ---F.R.D---, 2010 WL 60922 (C.D. Cal. 2010) ....................................................... 15

*Roman v. Maietta Constr., Inc.,*
  147 F.3d 71 (1st Cir. 1998) ........................................................................................ 10

*Rosales v. Lore,*
  149 F. App'x 245 (5th Cir. Aug. 19, 2005) ........................................................ 20, 21

*Shaffer v. Am. Med. Ass'n.,*
  2010 WL 1541643 (N.D. Ill. Apr. 19, 2010) ............................................................. 6

*Sorenson v. CHT Corp.,*
  2004 WL 442638 (N.D. Ill. 2004) ............................................................................. 11

*Tate v. Showboat Marina Casino Partnership,*
  357 F. Supp. 2d 1075 (N.D. Ill. 2005) ............................................................. 6, 7, 16

*Tombrello v. USX Corp.,*
  763 F. Supp. 541 (N.D. Ala. 1991) ........................................................................... 11

*Turner v. The Saloon, Ltd.,*
  595 F.3d 679 (7th Cir. 2010) ..................................................................................... 20

*Von Friewalde v. Boeing Aerospace Operations, Inc.,*
  339 F. App'x 448 (5th Cir. 2009) .............................................................................. 21

*Winskunas v. Birnbaum,*
    23 F.3d 1264 (7th Cir. 1994) ................................................................................. 17

*Wood v. The Mid-America Management Corp.,*
    192 F. App'x 378 (6th Cir. 2006) ..................................................................... 19, 20

*Wood v. Trivita, Inc.,*
    2008 WL 6566637 (D. Ariz. Sept. 18, 2008) ........................................................ 11

Defendants DirectSat USA, LLC ("DirectSat"), UniTek USA, LLC ("UniTek"), Jay Heaberlin, Lloyd Riddle and Dan Yannantuono (collectively, "Defendants"), by and through their undersigned counsel, hereby submit this Memorandum of Law in support of their Motion for Summary Judgment.

## I. INTRODUCTORY STATEMENT

Plaintiffs have filed this overtime action seeking to recoup allegedly unpaid wages pursuant to state statute, federal statute, and state common law. Importantly, each of the claims arises from an alleged underpayment of wages that itself derives from the alleged underreporting of time worked by Plaintiffs. Now that discovery has concluded, Defendants are entitled to judgment as a matter of law because (1) Plaintiffs' common law claims are substantively preempted by the Fair Labor Standards Act, 29 U.S.C. §§201, *et seq.*; (2) Plaintiffs' state law claims (both statutory and common law) fail as to the absent class members, as Plaintiffs failed to adduce evidence to suggest, let alone establish, that Defendants violated the law with respect to these individuals; and (3) Plaintiffs' federal and state wage claims are unfounded given Plaintiffs' failure to present evidence of the number of hours they claim to have worked.

Aside from the issue of preemption, which presents a straight forward application of federal law, Defendants' arguments all stem from the fact that Plaintiffs cannot premise their claims on the representational testimony of the named Plaintiffs. More specifically, as set forth in Defendants' Motion for Decertification (filed contemporaneously herewith and incorporated by reference herein), the named Plaintiffs' claims are each based on disparate factual scenarios that vary depending on their individual supervisors and geographically distinct locations. Accordingly, the named Plaintiffs cannot rely on their experiences to establish liability on behalf of the entire class without trampling Defendants' due process rights. As such, Plaintiffs' failure

to produce any evidence from any absent class member dooms their claims in this action. Thus, for these reasons and the reasons that follow, Plaintiffs' evidence does not create a genuine issue of material fact, and Defendants are entitled to judgment as a matter of law.

## II.    FACTUAL BACKGROUND

This case centers on Defendants' alleged failure to pay overtime wages to DirectSat technicians, who are the individuals responsible for performing the various tasks necessary to install, upgrade, and disconnect the various satellite services DirectSat's customer offers. As discussed below, Plaintiffs have presented proof for only a handful of the putative class members. Plaintiffs, apparently, intend to prove their case with representational evidence, relying upon DirectSat's application of a "uniform and generally applicable" policy. As discussed in detail in Defendants' Motion for Decertification, however, Plaintiffs' own testimony demonstrates the inherently individual nature of Plaintiffs' claims. This reality undercuts and is fatal to Plaintiffs' efforts to extrapolate the experiences of a few to the entire class as a whole and confirms that Plaintiffs have simply failed to present any evidence to establish liability on a class-wide basis.

### A.    DirectSat's Formal Wage and Overtime Policy[1]

DirectSat is a Delaware limited liability company with its principal place of business in King of Prussia, Pennsylvania. *See* Defs.' Statement of Facts ("SOF") ¶1.[2]  DirectSat provides installation fulfillment service to DirectTV at approximately twenty-four locations scattered across more than a dozen states, including Illinois. *Id.* ¶2. UniTek is a Delaware limited liability

---

[1] Defendants must briefly discuss their formal policy to demonstrate that Plaintiffs' claims do not arise directly from this policy and to demonstrate the impropriety of representational proof.

[2] Defendants incorporate their Statement of Facts, which was filed contemporaneously hereto in accordance with Local Rule 56.1.

company with corporate offices located in Blue Bell, Pennsylvania. *Id.* ¶3. UniTek is DirectSat's parent company. *Id.* ¶4.[3]

Plaintiffs are non-exempt, hourly employees who worked out of two of DirectSat's three Illinois field offices, which are located in Bedford Park, Algonquin and Bolingbrook. *Id.* ¶¶8, 10-12. At these field offices (or "projects"), DirectSat employs project managers, who are responsible for overseeing the entire field office operation, supervisors who manage the installation technicians, and installation technicians who perform various tasks at the subscriber's home. *Id.* ¶13-14. The installation technicians were divided into separate and distinct "tech teams," which were supervised by different field supervisors. *Id.* ¶15.

DirectSat pays installation technicians, including Plaintiffs, pursuant to a job rate system. *Id.* ¶16; *see also* 56 Ill. Admin. Code 210.430; 29 C.F.R. § 778.112. Each discrete task performed by technicians is assigned a value, and after performing the task, the employee is credited with the value assigned to that task.[4] *See* SOF ¶16-17. At the end of the week, the value of the jobs performed is aggregated to determine the technician's production value for the week. *Id.* ¶18.

To ensure that its technicians are properly compensated in compliance with federal and state law, technicians' time is tracked on weekly time sheets that are collected at the local field offices and forwarded to payroll in Blue Bell, Pennsylvania. *Id.* ¶19. DirectSat instructs its technicians to "record the actual time worked" and further informs the technicians that "time

---

[3] The individual Defendants in this matter are as follows: (1) Jay Haeberlin who is DirectSat's Vice President of Operations; (2) Lloyd Riddle wgi was the Chief Executive Officer for DirectSat; and (3) Dan Yannantuono who is currently DirectSat's Chief Executive Officer. *See* SOF ¶5-7.

[4] The precise rate paid to a particular technician is also determined by the "level" at which the technician is designated by DirectSat. *Id.* ¶18. The higher a technician's level, the more money the technician will earn per job. *Id.* For example, while a Level 1 technician may earn $10.00 per installation, a Level 3 technician would earn $15.00 for the same task. *Id.*

worked" includes "the time [they] begin and end work." *Id.* ¶¶19-22. The weekly time sheet reflects both productive and non-productive hours. *Id.* ¶20-21. Non-productive time includes, for example, driving time between jobs. *Id.* ¶22.

DirectSat's field supervisors (who are the lowest level of supervisor at any given field office) are required to verify the completed time sheets by comparing the time sheets to the work that each technician was scheduled to perform during the week. *Id.* ¶23. After the technicians complete the time sheets and after the field supervisor verifies the time, the time sheets are sent to the payroll department, which is located in Blue Bell, Pennsylvania. *Id.* This time keeping policy is routinely conveyed to the technicians via their Project Managers, who have weekly "PA" calls with company executives. *Id.* ¶¶24-26. In addition to these PA calls and the direction provided at the local field offices, DirectSat will on occasion attach memoranda to the technicians' pay stubs to remind them of the DirectSat time-keeping policy. *Id.* ¶26.

After recording all of the hours worked by these technicians, DirectSat calculates an "effective hourly rate" by dividing the total amount of production accumulated in a particular week by the total number of hours worked in that same week. *Id.* ¶27. If the technician works more than forty hours in a single week, the technician's overtime rate is determined by multiplying his effective hourly rate by one-and-one-half. *Id.* ¶29. The resulting "overtime rate" is then multiplied by the number of hours worked over forty to determine the overtime payable to the technician. *Id.* ¶29. If a technician works forty hours or less in a week, his gross pay for that week is equal to his production. *Id.* ¶¶27-30.

**B.      The Named Plaintiffs' Testimony Demonstrates that Their Claims are Inherently Individual in Nature.**

As set forth at length in Defendants' Motion for Decertification, Plaintiffs' testimony concerning the policies they were subjected to varies drastically from Defendants' formal wage

4

and overtime policy. *See* Defs.' Mot. Decert. at Section IV.A. Additionally, Plaintiffs' versions are each individually dissonant, which gives rise to multiple theories of liability that are not common to the tentatively certified class. For the sake of brevity, Defendants will highlight these disparities, without reiterating the lengthy and substantive discussion set forth in the Motion for Decertification (which Defendants incorporate herein).

Defendants' policy is clear: technicians are required to record all of the time they work, which includes both productive and non-productive time. *Id.* ¶¶20-22. Plaintiffs' experiences differed greatly from this policy, which several of the Plaintiffs openly admit. *Id.* ¶¶31-32. Plaintiffs have only produced testimony from six individuals, three of whom worked at the Bolingbrook location and three of whom worked at the Bedford Park location. Plaintiffs failed to offer testimony from any individual who worked at the Algonquin location. *Id.* ¶12.

Beginning with the Bedford Park location, Pompey Hicks—who admits that his supervisor, Brian Bramson, never told him to underreport his hours—underreported his hours to avoid any form of discipline. *Id.* ¶¶33-34. Gerald Farmer, who worked at the same location as Mr. Hicks, testified that he was "encouraged" to underreport his hours to look more efficient. *Id.* ¶36. Mr. Farmer admits, however, that the "encouragement" was far from uniform and he testified that when it came to recording time, he received "many answers" from many different individuals. *Id.* ¶37-39. Odell Stifffend stated clearly that he was told not to report any time in excess of 42 hours worked. *Id.* at ¶40. This testimony differs from Mr. Farmer's and Mr. Hicks' experiences and is a gross deviation from Defendants' formal policy. Further the testimony of Mr. Hicks, Mr. Stiffend, and Mr. Farmer differs from that offered by Darrick Hundt—a field

supervisor at the Bedford Park location[5]—who testified that he did **not** tell technicians that they could not record all of their time. *Id.* ¶42.

The stories emanating from the individuals who worked at the Bolingbrook location are just as discordant. For instance, Antwon Williams spent a portion of his time at DirectSat following a different company's policy altogether. *Id.* ¶43. Perhaps even more damaging, Mr. Williams conceded that Mr. Emling—who worked with Mr. Williams—recorded time in a manner that differed from everyone else, stating that Mr. Emling's time-keeping methodology was his "own thing." *Id.* ¶44. Lastly, Silas Junious stated that he was required to record only 40 hours per week and that he would record some but not all of his drive time. *Id.* ¶46. Again, this story differs from all other Plaintiffs and from DirectSat's formal policy.

## III. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a mater of law." *See* Fed. R. Civ. P. 56; *Tate v. Showboat Marina Casino Partnership*, 357 F. Supp. 2d 1075, 1079 (N.D. Ill. 2005) (St. Eve, J.). "A genuine issue of material fact exists only if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Tate*, 357 F. Supp. 2d at 1079 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "Thus, to survive summary judgment, the nonmoving party must present evidence sufficient to establish a triable issue of fact on all essential elements of its case." *Shaffer v. Am. Med. Ass'n*, 2010 WL 1541643, *4 (N.D. Ill. Apr. 19, 2010) (St. Eve, J.) (quoting *Lewis v. CITGO Petroleum Corp.*,

---

[5] As this Court is well-aware, Mr. Hundt is Plaintiffs' counsel's client in another matter currently pending before this Court. It was during Mr. Hundt's deposition that Plaintiffs' counsel solicited him to initiate a lawsuit against many of the named Defendants.

561 F.3d 698, 702 (7th Cir. 2009)).[6] "Neither the mere existence of some alleged factual dispute nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Gatto v. Mortgage Specialists of Illinois*, 442 F. Supp. 2d 529, 534 (N.D. Ill. 2006) (internal quotations and alterations omitted).

The party "seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact." *Tate*, 357 F. Supp. 2d at 1079. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). For a factual dispute to be "genuine," the evidence presented must be such that a reasonable jury could return a verdict for the non-moving party:

> [T]he judge must ask . . . whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff . . . 'upon whom the *onus* of proof is imposed.'

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (citation omitted). "The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case." *Hughes v. Cook*, 452 F. Supp. 2d 832, 834-35 (W.D. Tenn. 2006) (citing *Celotex*, 477 U.S. at 325.) Proving the absence of a material fact "may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attaching the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party." *Id.* A court must enter summary judgment "against a nonmoving party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 322 (1986).

---

[6] Pursuant to this Court's policies and procedures, a copy of this case, and all unpublished opinions upon which DirectSat relies, are attached hereto as Exhibit "R."

## IV.    ARGUMENT

Defendants move for judgment with respect to three issues. First, Plaintiffs' state common law claims—Counts II-IV of the Complaint—are preempted by the FLSA. Congress intended the FLSA to provide the exclusive enforcement and remedial scheme for violations of rights that derive from or that are based upon rights created by the FLSA. State common law claims, like those asserted by Plaintiffs in this action, which are duplicative of or are based upon rights originating from the FLSA obstruct the enforcement and remedial schemes embodied in the FLSA. Accordingly, these state law claims are preempted under the doctrine of implied preemption.

Second, Plaintiffs failed to adduce record evidence to demonstrate whether, and to what extent, the absent class members were subject to an unlawful wage and compensation policy. As set forth above, Plaintiffs claims in this matter derive from variant and informal policies that were apparently implemented in different ways by different local field supervisors. These theories of liability are not class wide in nature. Instead, these theories of liability are specific to each individual. This reality precludes Plaintiffs from attempting to prove their case with representative testimony from the named Plaintiffs as, quite simply, the testimony of the named Plaintiffs is not representative of the absent class members. Given this reality, Plaintiffs are left with no evidence to suggest that they were subject to a uniform and unlawful wage and overtime policy. To the contrary, the evidence shows that Defendants' formal wage and overtime policy applied and that this policy was compliant with all applicable laws. Accordingly, aside from the named Plaintiffs, this Court must grant judgment in Defendants' favor as to all absent class members.

Finally, Plaintiffs failed to provide evidence (1) to prove the number of hours actually worked or (2) to establish their damages on a class-wide (or individual) basis. Rather, Plaintiffs rely on the named Plaintiffs' individual recollections concerning the "average" amount of time worked per week or "estimates" of how many hours worked in a given week. These "estimates" and "averages" are insufficient to prompt a reasonable and just inference of how many hours (over forty) the individuals allegedly worked. Because proof of these elements is necessary to bring a wage claim under both federal and state law, Defendants are entitled to judgment as to Counts I and V.

A.    **Plaintiffs' State Law Claims are Preempted by the FLSA.**

Plaintiffs' state law claims are substantively preempted by the FLSA, as the state law claims obstruct a remedial scheme that Congress intended to be comprehensive.[7] State law claims that would obstruct the application and enforcement of a comprehensive federal statutory scheme are preempted under an obstacle preemption theory. "Obstacle" preemption, also known as implied conflict preemption, "exists when, 'under the circumstances of a particular case, the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *DeWeese v. Nat'l R.R. Passenger Corp. (Amtrak)*, ---F.3d----, 2009 WL 4912134, *4 & n.9 (3d Cir. Dec. 22, 2009) (quoting *Holk v. Snapple Beverage Corp.*, 575 F.3d 329 (3d Cir. 2009)); *see also Hoagland v. Town of Clear Lake, Ind.*, 415 F.3d 693, 696 (7th Cir. 2005) (describing obstacle preemption, *i.e.*, implied conflict preemption); *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 192-93 (4th Cir. 2007) (citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984)). In the FLSA context, where the factual and legal predicate of a state law claim is premised on or intertwined with violations of rights provided under the FLSA, such state

---

[7] In a previous Order, this Court directed Defendants to raise its preemption arguments at summary judgment. *See* Dkt. No. 40.

law claims are preempted so that the remedies, procedures, and other enforcement mechanisms that Congress established in the FLSA will not be obstructed. *Anderson*, 508 F.3d at 193-94.

"Congress prescribed exclusive remedies in the FLSA for violations of its mandates." *Id.* at 192; *Roman v. Maietta Constr., Inc.*, 147 F.3d 71, 76 (1st Cir. 1998) (reasoning that "the FLSA is the exclusive remedy for enforcement of rights created under the FLSA"); *Petras v. Johnson*, 1993 WL 228014, *2 (S.D.N.Y. June 22, 1993) (finding that "[c]ourts have consistently held that the [FLSA] is the exclusive remedy for enforcing the rights" it creates). Specifically, the FLSA "provides an unusually elaborate enforcement scheme," *Anderson*, 508 F.3d 192, embodying a "careful blend of administrative and judicial enforcement powers" that includes:

> criminal penalties for willful violators of the minimum wage and overtime provisions; a private right of action permitting employees to sue in federal or state court to recover unpaid minimum wage and overtime compensation, liquidated damages, attorneys fees, and costs; and authorization for the Secretary of Labor to supervise payment of unpaid compensation due under the Act and to bring actions for compensatory and injunctive relief for violations of the Act's minimum wage and overtime provisions . . . .

*Kendall v. City of Chesapeake*, 174 F.3d 437, 443 (4th Cir. 1989); *Petras v. Johnson*, 1993 WL 228014, at *2 (reasoning that FLSA's remedial scheme is such that "a clearer case of implied intent to exclude other alternative remedies by the provision of one would be difficult to conceive"). Due to its comprehensive nature, the FLSA provides the sole and exclusive relief for violations of its substantive provisions and it preempts state law claims that encroach upon this exclusivity. *See Anderson*, 508 F.3d at 192.

Recognizing the FLSA's preemptive effect, numerous courts—including this Court—have held that the FLSA precludes state law claims, **including claims for unjust enrichment, quantum meruit, and breach of implied contract**, arising from or based upon rights protected

10

by the FLSA. *See, e.g., Sorenson v. CHT Corp.*, 2004 WL 442638, *7 (N.D. Ill. 2004) (holding common law claims preempted by FLSA); *Anderson*, 508 F.3d at 193-95 (holding that duplicative breach of contract, fraud, and negligence claims were preempted by the FLSA); *Wood v. Trivita, Inc.*, 2008 WL 6566637, *6 (D. Ariz. Sept. 18, 2008) (holding state law wage claims preempted by the FLSA's remedial scheme); *Lopez v. Flight Servs. & Sys., Inc.*, 2008 WL 203028, *7 (W.D.N.Y. Jan. 23, 2008) (finding FLSA preempted claims for fraud, breach of contract, breach of implied covenants of good faith, tortious interference with contract, and unjust enrichment claims); *Chen v. St. Beat Sportswear, Inc.*, 364 F. Supp. 2d 269, 292-93 (E.D.N.Y. 2005) (holding state law negligence claims were preempted by FLSA); *Flores v. Albertson's, Inc.*, 2003 WL 24216269, *5 (C.D. Cal. Dec. 9, 2003) (same); *Alexander v. Vesta Ins. Group, Inc.*, 147 F. Supp. 2d 1223, 1240-41 (N.D. Ala. 2001) (holding fraud claims were "recast" FLSA claims and were preempted by FLSA); *Petras*, 1993 WL 228014, at *4 (same); *see also Tombrello v. USX Corp.*, 763 F. Supp. 541, 545 (N.D. Ala. 1991) (reminding that claims amounting to a "wrongful refusal to pay for work and labor . . . must be brought under the [FLSA]"); *Moeck v. Gray Supply Corp.*, 2006 WL 42368, *2 (D.N.J. Jan. 6, 2006) (same); *Johnston v. Davis Sec., Inc.*, 217 F. Supp. 2d 1224, 1227-28 (D. Utah 2002) (same); *see generally* Rachel K. Alexander, *Federal Tails and State Puppy Dogs: Preempting Parallel State Wage Claims to Preserve Integrity of Federal Group Wage Actions*, 58 Am. L. Rev. 515 (2009).[8]

Here, Counts II-IV of Plaintiffs' Complaint—asserting claims for unjust enrichment, quantum meruit, and breach of implied contract, respectively—are squarely based on rights

---

[8] For example, in *Anderson*, where Plaintiffs pleaded only state common law causes of action, the Fourth Circuit found that adjudication of the "state law claims essentially require[d] the same proof as claims asserted under the FLSA itself." *Id.* The *Anderson* Court concluded that the plaintiffs "rel[ied] on the FLSA for their rights, and they invoke[d] state law only as the source of remedies for the alleged FLSA violations" and dismissed the state law claims accordingly. *Id.*

established by the FLSA and, therefore, are preempted by the FLSA's comprehensive remedial scheme. *See Anderson*, 508 F.3d at 193-95; *see also Johnston*, 217 F. Supp. 2d at 1227-28 (dismissing claims for "conversion, unjust enrichment, fraud by material omission, fraud by affirmative misrepresentation, negligent misrepresentation, gross negligence, breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, and intentional infliction of emotional distress" because these claims were "based on the same facts and circumstances as [plaintiff's] FLSA claims"). Each of these claims arises from the alleged underpayment of wages, which impacts rights, remedies, and procedural protections that are embodied by the FLSA. By asserting these common law claims, Plaintiffs are attempting to circumvent the procedures required by and the remedies offered under the FLSA.

More specifically, Plaintiffs seek to de-federalize wage and compensation claims by re-packaging FLSA claims as common law claims under state law. Permitting such claims to stand would allow Plaintiffs to side-step the FLSA in direct contravention of Congress's intent in enacting the FLSA.[9] Accordingly, because Plaintiffs have merely re-couched FLSA claims as state common law claims in the hopes of avoiding procedures called for in the FLSA and an in effort to expand available remedies, this Court must join the numerous other courts cited above, and find such claims preempted by the FLSA.

---

[9] Re-couching FLSA claims as common law claims seriously undermines the expansive remedial provisions embodied in the FLSA, especially in a situation, like this one, where a plaintiff re-couches the claim and then seeks certification of **only** the state law claim under Rule 23. As this Court knows, FLSA claims are not adjudicated under the opt-out procedure embodied by Rule 23. Rather, due to specific congressional action aimed at preventing exactly what Plaintiffs are attempting to do here, FLSA classes are opt-in classes governed by §216(b). Permitting Plaintiffs to manipulate an FLSA claim to fit the elements of a state common law claim wholly abandons the protections that Congress specifically provided when enacting §216(b) in the Portal-to-Portal Act.

**B.     Plaintiffs Have Not Presented Any Admissible Evidence to Support the Claims of the Absent Class Members, Mandating Judgment as to All Claims Asserted by Absentee Class Members.**

Defendants employ a lawful wage and overtime policy. This formal policy is applicable at their local field offices. The named Plaintiffs, however, contend that local field supervisors bypassed this formal policy and implemented their own, informal policies that led to the deprivation of wages. *See* SOF ¶¶31-46. Even assuming this to be true, *arguendo*, the named Plaintiffs' claims reveal that these alleged "informal" policies varied from supervisor to supervisor and from location to location. *Id.* Accordingly, the named Plaintiffs' experiences are not similar to each other and are not similar to or representative of the absent class members. *Id.*

To prove their case, however, Plaintiffs intend to rely on the testimony of the named Plaintiffs only. *See* SOF ¶56. Notwithstanding this desire, the disparity in the named Plaintiffs' claims and theories of liability confirm that the named Plaintiffs' experiences are not the same (or even similar) to the absent class members—*i.e.*, the named Plaintiffs' experiences are not representative of the absent class. This eliminates Plaintiffs' ability to prove class-wide liability through representative testimony.

Taking away representational testimony, there is no evidence to suggest that DirectSat's lawful wage and overtime policy was not applied to the absent class members. Indeed, the only evidence of record suggests that the formal policy was applied to at least a large percentage of the putative class. Because Plaintiffs failed to present evidence to the contrary, there is no genuine issue of material fact as to the claims of the absent class members and, as a consequence, this Court should enter judgment on all of their claims in favor of Defendants.

1.   **Plaintiffs' Cannot Overcome Their Evidentiary Shortcomings with Representational Proofs because Their Claims and Theories of Liability Derive from Individual Experiences Rather than Class-Wide Treatment.**

This case does not lend itself to representational proof. Instead, each Plaintiff will be required to testify and subject themselves to cross-examination. Plaintiffs—who have never provided any insight into how they will proceed on a representative basis—have simply failed to meet their burden of showing how they will be capable of proving their case without approximately 500 minitrials as to liability and 500 minitrials as to damages. The reason for this shortcoming is straightforward: Plaintiffs cannot meet their burden.

This case involves a number of fractured stories from individuals working for different managers, at different locations, and at different times. *See* Section II.B, *supra*; *see also* Defs.' Mot. for Decertification at IV.A. Indeed, the evidence demonstrates and Plaintiffs effectively concede that not all of the individuals who are currently part of this class fall under each allegedly "common" theory of liability. *See* SOF ¶¶31-46. More specifically, each of the named Plaintiffs testified that they were instructed by low-ranking supervisors to record hours in violation of DirectSat's formal policy. *Id.*; *see also* Defs.' Mot for Decertification at IV.A. This alleged "instruction" was not uniform, as some field supervisors did not deviate from the formal policy. *See* SOF ¶42. Even where such deviation is alleged to have occurred, however, the deviation was not uniform in nature (such that Plaintiffs could rely on a uniform "policy-not-to-follow-the-policy" theory). *See* SOF ¶¶31-46; *see also* Defs.' Mot for Decertification at IV.A. Rather, the named Plaintiffs testified to varying experiences that arose from inconsistent

directions they allegedly received from different field supervisors.[10] *See* SOF ¶¶31-46; *see also* Defs.' Mot for Decertification at IV.A.

In situations like those present in this case, where individualized testimony and disparate theories are pervasive, courts preclude representational proof for the simple reason that the putative proof is **not representative**. *See, e.g.*, *Reed v. County of Orange*, ---F.R.D----, 2010 WL 60922, at *12 (noting that issue of whether individuals were deprived meal breaks was individual in nature and that "using a representative sample would be a highly inaccurate method of determining the validity of Plaintiffs' claims"); *Johnson v. Big Lot Stores, Inc.*, 561 F. Supp. 2d 567, 587-88 (E.D. La. 2008) (decertifying case where evidence presented at bench trial showed great variance in employment experiences and where proof was not representative of the whole class). As one court aptly summarized:

> Representative testimony will not accurately capture each Plaintiffs' diverse factual circumstances. This will result in some Plaintiffs being prejudiced by underpayment on their claims as well as prejudice to Defendant, which will overpay some Plaintiffs on their claims. As one court has noted, "a collective action is designed to permit the presentation of evidence regarding certain representative plaintiffs that will serve as evidence for the class as a whole." *Bayles v. Am. Med. Resp. of Colo.*, 950 F. Supp. 1053, 1065 (D. Colo. 1996). Multiple, individual trials on the merits is the antithesis of a collective action, which will occur in this case if it continues collectively . . . . "It is oxymoronic to use such a device in a case where proof regarding each individual is required to show liability." *Bayles*, 950 F. Supp. at 1065.

*Reed*, 2010 WL 60922, at *17.

---

[10] The individualized nature of Plaintiffs' claims and the disparate nature of the theories they present is augmented by the fact that the technicians work remotely, *i.e.*, the technicians work out in the field alone, completing the work on their individual work orders at their individual job sites. *See* SOF ¶47. In other words, quite unlike a case where the employer enjoys constant supervision over its employees and where other employees can testify concerning the activities of a group of individuals, here, each plaintiff (both named and opt-in) will need to testify as to their exact routine, as to the type of work performed, and as to the amount of time taken to perform such tasks. Moreover, the isolated nature of Plaintiffs' individual employment environments will give rise to countless credibility determinations challenging the factual accuracy of Plaintiffs' allegations.

To hold otherwise would permit Plaintiffs to essentially guess as to the policy that impacted the absent class members and would require Plaintiffs to guess as to the number of hours that these individuals worked, but did not record. Indeed, Plaintiffs' own stories as to the number of hours that they worked, but did not record, vary as Plaintiffs followed differing policies when it came to recording time. *See* SOF ¶¶31-46. Thus, Plaintiffs are left to guess that the absent class members experiences are similar to theirs, which falls far short of satisfying Plaintiffs' burden in overcoming summary judgment. *Anderson*, 477 U.S. at 252.

Therefore, any self-serving willingness on Plaintiffs' part to present their case on a representational basis does not overcome the individualized nature of their claims. Accordingly, the named Plaintiffs' testimony cannot be considered as proof of Defendants' alleged violations as to the absent class members.

> **2. Due to the Individuality of the Claims Plaintiffs' Proffer, at Most, Plaintiffs have Offered Evidence Only as to the Named Plaintiffs and Such Evidence Cannot be Extrapolated to the Absent Class Members.**

Without the aid of representational testimony and given that Plaintiffs' claims are not typical of the absent class, **there is no record evidence** to suggest that the absent class members were subjected to an unlawful wage and compensation policy. To the contrary, the record evidence establishes that DirectSat employs a lawful wage and overtime policy. *See* SOF ¶¶16-30. More specifically, Defendants have demonstrated that (1) DirectSat's formal policy applied at all local field offices; (2) DirectSat's formal policy was compliant with all applicable laws; and (3) DirectSat's formal policy compensated Plaintiffs for all time for which they were entitled. *Id.* Without any evidence to the contrary, Plaintiffs have failed to create a genuine issue of material fact concerning the claims of the absent class members. *See Hughes v. Cook*, 452 F. Supp. 2d 832, 834-35 (W.D. Tenn. 2006) (citing *Celotex*, 477 U.S. at 325); *Tate*, 357 F.

Supp. 2d at 1079 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Accordingly, summary judgment as to all absent class members is appropriate. *See Celotex*, 477 U.S. at 322 (1986).

Should the Court grant Plaintiffs a great amount of leeway and consider speculative assumptions and blatant hearsay, Plaintiffs testimony still only links their individual and discrete experiences to a handful of individuals who worked with them at certain DirectSat locations. As an initial matter, courts are precluded from considering inadmissible speculation and hearsay in connection with a Motion for Summary Judgment. *See Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir. 1994); *see also Fry v. Sheahan*, 2009 WL 2496575, *1 (N.D. Ill. Aug. 12, 2009) (reminding that at summary judgment plaintiff must present admissible evidence to overcome motion and that hearsay is "incapable of creating a genuine issue of material fact" (internal quotation and emphasis omitted)). This Court should adhere to such principles in this case.

Nevertheless, even granting Plaintiffs the benefit of considering such testimony, Plaintiffs' evidence links only a few additional individuals to their specific circumstances. Pompey Hicks and Gerald Farmer did not implicate any other technicians in their testimony.[11] Aside from other named Plaintiffs, Antwon Williams speculatively identified Gary Shear, Eddie Rude, a "Jeremy," and a "Corey." *See* SOF ¶51. Steve Emling identified Gary Shear and Jeremy Stipp. *See id.* ¶52. Silas Junious identified the same individuals identified by Antwon Williams, adding only a "Chris" to the list. *See id.* ¶53. Finally, Odell Stiffend identified Frank Kane, Robert Deeds, Twon Bridges, Joey Carpenter, a "Laron," a "Raymond," a "Cornelius,"

---

[11] In fact, Mr. Farmer admitted that he did not know whether other technicians wrote down all or only part of the time they worked. *See* SOF ¶38.

and a "Nicole." *See* SOF ¶54.[12] Plaintiffs are speculating as to the time-keeping methods of these individuals, but even permitting such speculation, Plaintiffs' testimony only implicates an additional fourteen (14) individuals. Thus, at most, only the claims of the named Plaintiffs and these additional fourteen individuals survive summary judgment.

Lastly, even if the Court is inclined to extrapolate Plaintiffs' inherently individual experiences onto the absent class members who worked at Bedford Park and Bolingbrook, given that none of the named Plaintiffs worked at Bedford Park or Bolingbrook locations after February, 2008, there is no evidence of record to suggest what, if any, unlawful policy applied at those locations after the named Plaintiffs' left their employment. More specifically, the three named Plaintiffs who worked at the Bolingbrook location all concluded their employment prior to October, 2007. Thus, there is **no** evidentiary basis to find that the discrete, informal policies that applied only to these three named Plaintiffs applied to other individuals after these Plaintiffs left their employment.

Likewise, there is **no** record evidence to suggest what, if any, variant and informal policies applied at the Bedford Park location after March of 2008, as none of the named Plaintiffs worked at that location after that date. Accordingly, there is no evidentiary basis for including individuals who did not begin their employment before February of 2008. To permit Plaintiffs' to represent individuals who worked at DirectSat after this date would wholly undermine Defendants' due process rights as Plaintiffs have simply not demonstrated any link between their experiences and the experiences of individual who worked at DirectSat after they did. As a consequence, judgment in favor of Defendants is warranted.

---

[12] The named Plaintiffs were unable in many instances to identify last names. The first names of the individuals mentioned are shared by more than one person at the discrete field offices.

3. **At the Least, because There is No Testimonial Evidence from Any Individual Working at the Algonquin Location, Summary Judgment as to All Individuals Working at that Location is Mandated.**

Even if this Court were to grant Plaintiffs an unparalleled amount of leeway and assume that the variant experiences of the named Plaintiffs is sufficient to capture the experiences of all individuals at the Bolingbrook and Bedford Park locations, Plaintiffs failed to adduce any record evidence to suggest that Defendants violated the rights of individuals at the Algonquin location. *See* SOF ¶12. None of the named Plaintiffs worked at the Algonquin location and none of the named Plaintiffs purports to know what, if any, unlawful policy applied at that location. Thus, Plaintiffs have offered **no** evidence to suggest (let alone establish) that DirectSat's lawful wage and overtime policy was not followed properly in Algonquin.

Therefore, the only evidence of record concerning Algonquin is Defendants' evidence concerning the lawful nature of DirectSat's formal policy. *See* SOF ¶¶16-30. Plaintiffs have not marshaled any evidence to contest the fact that DirectSat's lawful policy applied in Algonquin. Accordingly, even giving Plaintiffs the benefit of great doubt in Bolingbrook and Bedford Park, this Court must—at the very least—grant summary judgment in Defendants' favor as to all claims arising from individuals who worked solely at the Algonquin location.

C. **The Named Plaintiffs' FLSA Claims and All Plaintiffs' Illinois Wage Claims Fail because Plaintiffs have Failed to Proffer Any Evidence Sufficient to Demonstrate the Number of Hours They Allegedly Worked.**

The named Plaintiffs' FLSA claims and all class members' Illinois Wage claims fail, because Plaintiffs failed to present evidence to establish the number of hours they purportedly worked. Plaintiffs "must prove by a preponderance of the evidence that he or she 'performed work for which he or she was not properly compensated.'"[13]   *Wood v. The Mid-America*

---

[13] While the cases cited in this section concern the named Plaintiffs' FLSA claims, the analysis applies to their Illinois Wage claims as the Illinois Wage claims are to be adjudicated consistently with

*Management Corp.*, 192 F. App'x 378, 380 (6th Cir. 2006) (quoting *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (internal quotation omitted)). Plaintiffs do not claim that they were not paid for overtime hours that they reported on their time cards. *See* SOF ¶48. Rather, Plaintiffs claim that they were not compensated for work that they allegedly performed, but did not record on their timesheets.

Plaintiffs cannot, however, prove their claim on mere speculation and conjecture. *Lee v. Vance Executive Protection, Inc.*, 7 F. App'x 160, 166 (4th Cir. 2001). Each employee must come forward with **evidence** from which a jury could draw a 'just and reasonable inference' of the extent of their work. *Id.* (quoting *Mt. Clemens Pottery Co.*, 328 U.S. at 687).[14] "Where there is insufficient evidence to estimate the amount and extent of hours worked in excess of forty per week," summary judgment as to the unrecorded hours is mandated. *Id.*; *see also Wood, supra.*

The Sixth Circuit's decision in *Wood* is instructive. The *Wood* plaintiff, like Plaintiffs allege in the instant case, did not keep any records of the overtime he allegedly failed to report. Rather, he "figured it out" himself, based on an "average" of hours he figured he worked in overtime each day. *Id.* at *6. In the Court's words, "This is a bridge too far." *Id.*; *see also Rosales v. Lore*, 149 F. App'x 245, 246 (5th Cir. Aug. 19, 2005) (summary judgment warranted where plaintiffs failed to offer "just and reasonable inference" regarding hours worked, and plaintiff's unsupported statement that he worked 12 or more hours a day, seven days a week for several months "strained credibility").

---

the FLSA. *See, e.g., Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690 n.7 (7th Cir. 2010); *Haynes v. Tru-Green Corp.*, 507 N.E.2d 945, 951, 154 Ill.App.3d 967 (Ill. App. Dist. 4 1987).

[14] The "just and reasonable" standard of proof is applicable only where Defendants' records are inadequate. *See Mt. Clemens Pottery Co.*, 328 U.S. at 687. Defendants assert that their records do not fall into this category, which will require Plaintiffs to meet a much higher burden of proof should this case go to trial. Nonetheless, as demonstrated in this section, even under the more lenient burden of proof, Plaintiffs are unable to demonstrate the number of hours they worked.

The Court's analysis of the plaintiffs' claims in *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 F. App'x 448 (5th Cir. 2009), is also persuasive. On appeal of summary judgment entered in favor of the defendants, the plaintiffs claimed that there was a "common nucleus" of liability facts among all their claims. *Id.* at 456. Rejecting that contention and finding that the circumstances of the plaintiffs' claims varied in significant ways and therefore they were not similarly situated, the Court proceeded to address each of the plaintiffs' claims individually. *Id.* The *Von Friewalde* Court concluded that "the claims of all those Appellants who have not produced any evidence at all, including named Appellant . . . and all but two of the opt-in Appellants, necessarily fail. Those Appellants had numerous opportunities to provide deposition testimony, affidavits, documents or answers to interrogatories in support of their claims." *Id.* Second, the Court analyzed the particular evidence with respect to each plaintiff, and concluded that all but two failed to put forth the minimum evidence to justify recovery. Summary judgment was properly granted against them. *Id.* at 456-61; *see also Grochowski v. Phoenix Construction*, 318 F.3d 80, 88-89 (2d Cir. 2003) (defendants entitled to judgment as a matter of law against non-testifying employees where plaintiffs produced only speculative evidence as to the number of hours the non-testifying employees worked; the "corpus of evidence . . . was simply inadequate for a jury to determine if their claims had any merit."); *Gatto v. Mortg, Specialists of Ill.*, 442 F. Supp. 2d 529, 535-36 (N.D. Ill. 2006).

As in these cases, Plaintiffs here failed to present any evidence to prove the number of hours they worked individually, let alone on a class-wide basis. Rather, Plaintiffs merely rely on speculation, estimates, and averages. *See, e.g.* SOF ¶¶35, 38, 45. Plaintiffs did not keep their own independent set of records and cannot rely instead on their self-serving and speculative assertions. Such unsupported assertions "strain credibility." *Rosales*, 149 F. App'x at 246.

Further, each of the named Plaintiffs admit that at least some of their time records are accurate, and none specifically state which records are inaccurate. *See* SOF ¶4950.

Therefore, Plaintiffs simply have failed to adduce any evidence to establish that they worked the times alleged. Further, Plaintiffs have also failed to present evidence to establish their damages in this matter, relying instead on self-serving speculation. Accordingly, this Court must summarily enter judgment in Defendants' favor as to all of Plaintiffs' claims as none of the Plaintiffs has brought forth tangible, non-speculative evidence to support justified inference as to the number of hours worked and/or as to the damages sought.

## V. CONCLUSION

For all of the forgoing reasons, Defendants respectfully request that this Court grant their Motion and enter judgment in favor of all Defendants.

Respectfully submitted,

*/s/ Colin D. Dougherty*

Jason S. Dubner (ARDC# 06257055)
Ursula A. Taylor (ARDC # 6287522)
Butler Rubin Saltarelli & Boyd
70 West Madison Street, Suite 1800
Chicago, IL 60602
(312) 444-9660

Eric J. Bronstein
Colin D. Dougherty
Gregory S. Voshell
Elliott Greenleaf & Siedzikowski, P.C.
Union Meeting Corporate Center
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000

Counsel for Defendants

DATED: June 28, 2010

## CERTIFICATE OF SERVICE

I, Colin D. Dougherty, hereby certify that, on this date, I caused the foregoing to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document, upon the following:

Jac A. Cotiguala, Esquire
Jac A. Cotiguala & Associates
431 South Dearborn Street
Suite 606
Chicago, IL 60605
Attorneys for Plaintiffs

Ryan F. Stephan, Esquire
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue
Suite 2560
Chicago, IL 60601
Attorneys for Plaintiffs


DATED:  June 28, 2010

*/s/ Colin D. Dougherty*
COLIN D. DOUGHERTY