IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GERALD FARMER, POMPEY HICKS, and ANTWON WILLIAMS, individually, and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br>v.<br><br>DIRECTSAT USA, LLC, *et al.*,<br>                Defendants. | : : : : : : : : : : : : | CIVIL ACTION<br><br><br>NO. 08CV3962<br>JUDGE AMY J. ST. EVE<br>MAGISTRATE JUDGE MARIA VALDEZ |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants DirectSat USA, LLC ("DirectSat"), UniTek USA, LLC ("UniTek"), Jay Heaberlin ("Heaberlin"), Lloyd Riddle ("Riddle") and Dan Yannantuono ("Yannantuono") (collectively, "Defendants"), by and through their undersigned counsel, hereby submit this Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment.

**I.   Introduction**

Plaintiffs have filed this overtime action seeking to recoup for themselves and other unnamed class members, who were and/or are employed by DirectSat as technicians, allegedly unpaid wages pursuant to state statute, federal statute and state common law. Importantly, each of the claims arises from an alleged underpayment of wages that itself derives from the alleged underreporting of time worked by Plaintiffs. Plaintiffs' Motion, however, ignores the actual state of the law, is devoid of evidence, misconstrues the record in this matter, and seeks summary judgment based upon nothing more than conclusory statements and unsupported allegations.

Plaintiffs neither have established, nor can establish, that there are no issues of material fact to entitle them to judgment as a matter of law. To the contrary, numerous disputed issues of material fact preclude summary judgment for Plaintiffs on any of the claims set forth in Plaintiffs' five-count Third Amended Complaint for alleged violations of Illinois wage and overtime requirements, 820 ILCS §105, *et seq.* (Count I), unjust enrichment (Count II), quantum meruit (Count III), breach of implied contract (Count IV) and alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (Count V), as to Named Plaintiffs individually. Contrary to Plaintiffs' self-serving conclusions, Plaintiffs' Motion and Memorandum, containing misstatements and omissions of the facts of record and legal authority, underscore that there are numerous vigorously disputed issues of fact concerning Plaintiffs' claims, barring summary judgment on any count.[1]

Plaintiffs, who styled their instant Motion as seeking "Partial Summary Judgment as to Liability," raise three issues in their supporting Memorandum for which they baselessly claim entitlement to summary judgment: 1) all drive time by DirectSat's Illinois technicians is compensable (*see* Plaintiffs' Memorandum of Law in support of Their Motion for Summary Judgment ("Plaintiffs' Memo"), p. 5); 2) Defendants failed to maintain accurate records of the hours worked by DirectSat's Illinois technicians (Plaintiffs' Memo, p. 7); and 3) Defendants failed to pay class members as required by the IMWL and FLSA. (Plaintiffs' Memo, p. 10)

Plaintiffs, however, are not entitled to summary judgment, as demonstrated by their flawed Motion. First, Plaintiffs are admittedly inconsistent and conflicted regarding their reliance upon, and compliance with, DirectSat's policies. Second, Plaintiffs fail to cite to record

---

[1] Defendants have simultaneously filed herewith their Response to Plaintiffs' Statement of Undisputed Facts as to which allegedly no genuine issues exist, which also contains additional facts articulated by Defendants that preclude the entry of summary judgment. The citations herein that refer to Defendants' Response to Plaintiffs' Statement of Undisputed Facts are cited as "RSF."

evidence that supports, much less proves, their assertions and conclusions.[2] Not surprisingly, Plaintiffs' Motion completely distorts the underlying facts in this matter, and is bereft of legal authority for its assertions. Moreover, the key allegedly "undisputed" facts are not only vigorously disputed, but lack even colorable support in the record and/or are directly contradicted by record evidence. Nevertheless, despite Plaintiffs' self-serving assertions, as set forth below, genuine issues of material fact exist that preclude the entry of summary judgment in Plaintiffs' favor.

## II. Factual Background

### A. DirectSat's Formal Wage and Overtime Policy[3]

DirectSat pays installation technicians, including Plaintiffs, pursuant to a job rate system. RSF ¶¶ 15, 42; *see also* 56 Ill. Admin. Code 210.430; 29 C.F.R. § 778.112. Each discrete task performed by technicians is assigned a value, and after performing the task, the employee is credited with the value assigned to that task.[4] *Id.* At the end of the week, the value of the jobs performed is aggregated to determine the technician's production value for the week. *Id.*

To ensure that its technicians are properly compensated in compliance with federal and state law, technicians' time is tracked on weekly time sheets that are collected at the local field offices. *Id.* ¶ 43. DirectSat instructs its technicians to "record the actual time worked." *Id.* ¶¶ 17, 19, 25-27, 41, 44. The weekly time sheet reflects both productive and non-productive hours. *Id.* Non-productive time includes, for example, driving time between jobs. *Id.* ¶ 44.

---

[2] As set forth in Defendants' Motions for Summary Judgment and for Decertification, Plaintiffs have failed to adduce any record evidence as to un-named class members.

[3] Defendants must briefly discuss their formal policy to demonstrate that Plaintiffs' claims do not arise directly from this policy and to demonstrate the impropriety of representational proof.

[4] The precise rate paid to a particular technician is also determined by the "level" at which the technician is designated by DirectSat. *Id.* ¶ 15. The higher a technician's level, the more money the technician will earn per job. *Id.* For example, while a Level 1 technician may earn $10.00 per installation, a Level 3 technician would earn $15.00 for the same task. *Id.*

DirectSat's field supervisors (who are the lowest level of supervisor at any given field office) are required to verify the completed time sheets by comparing the time sheets to the work that each technician was scheduled to perform during the week. *Id.* ¶ 45. After the technicians complete the time sheets and after the field supervisor verifies the time, the time sheets are sent to the payroll department, which is located in Blue Bell, Pennsylvania. *Id.* at ¶ 43. This time keeping policy is routinely conveyed to the technicians via their Project Managers, who have weekly "PA" calls with company executives. *Id.* ¶¶ 20, 45-46. In addition to these PA calls and the direction provided at the local field offices, DirectSat will on occasion attach memoranda to the technicians' pay stubs to remind them of the DirectSat time-keeping policy. *Id.* ¶ 46.

After recording all of the hours worked by these technicians, DirectSat calculates an "effective hourly rate" by dividing the total amount of production accumulated in a particular week by the total number of hours worked in that same week. *Id.* ¶ 47. If the technician works more than forty hours in a single week, the technician's overtime rate is determined by multiplying his effective hourly rate by one-and-one-half. *Id.* The resulting "overtime rate" is then multiplied by the number of hours worked over forty to determine the overtime payable to the technician. *Id.* ¶ 48. If a technician works forty hours or less in a week, his gross pay for that week is equal to his production. *Id.* ¶ 49.

Defendants' policy is clear: technicians are required to record all of the time they work, which includes both productive and non-productive time. *Id.* ¶¶ 17, 19, 25-27, 41, 44. Plaintiffs have only produced testimony from six individuals, three of whom worked at the Bolingbrook location and three of whom worked at the Bedford Park location. *Id.* ¶ 50. Plaintiffs failed to offer testimony from any individual who worked at the Algonquin location. *Id.* ¶ 57.

4

Additionally, none of the Named Plaintiffs worked at the Bolingbrook location after October, 2007. *Id.* ¶ 58. None of the Named Plaintiffs worked at the Bedford Park location after February, 2008. *Id.* ¶ 59. Some of the Named Plaintiffs admitted that, at points in time, they recorded all or most of their time. *Id.* ¶ 60. Therefore, because many, significant, genuine issues of material fact exist, this Court must deny Plaintiffs' Motion for Partial Summary Judgment.

**III.**   **Argument**

    **A.**   **Summary Judgment Standards Mandate the Denial of Plaintiffs' Motion.**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a mater of law." *See* Fed. R. Civ. P. 56; *Tate v. Showboat Marina Casino Partnership*, 357 F. Supp. 2d 1075, 1079 (N.D. Ill. 2005) (St. Eve, J.). "A genuine issue of material fact exists only if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "Thus, to survive summary judgment, the nonmoving party must present evidence sufficient to establish a triable issue of fact on all essential elements of its case." *Shaffer v. Am. Med. Ass'n*, 2010 WL 1541643, *4 (N.D. Ill. Apr. 19, 2010) (St. Eve, J.) (quoting *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009)).[5]

The party "seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact." *Tate*, 357 F. Supp. 2d at 1079. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). For a factual dispute to be "genuine," the evidence presented must be such that a reasonable jury could return a verdict for the non-moving party:

---

[5] Pursuant to this Court's policies and procedures, a copy of this case, and all unpublished opinions upon which DirectSat relies, are attached hereto as Exhibit "N."

> [T]he judge must ask . . . whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff . . . 'upon whom the *onus* of proof is imposed.'

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (citation omitted).

Here, as a matter of fact and law, this Court must deny Plaintiff's Motion for Summary Judgment.

### B. Plaintiffs' Ignore, and Fail to Address, the Portal-to-Portal Act Regarding Their Claims Concerning Alleged Preliminary and Postliminary Work.

In the first section of their Motion, Plaintiffs seek judgment against Defendants on behalf of the entire Class for all of the Illinois technicians' drive time to their first job for the day and to their homes from their last job for the day. (Plaintiffs' Memo, p. 5).[6] Prior to reporting to the day's first job, the technicians would occasionally have to report to weekly meetings with supervisors at the office location. RSF, ¶ 62. Also, some technicians would come to the office each day to pick up equipment and/or their daily assignments. RSF, ¶ 63. After a technician completed his last job for the day, he was instructed to go home, as he was done working for DirectSat for that day. RSF, ¶ 64.

In response to the flood of lawsuits that stemmed from the Supreme Court's broad holding in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), Congress passed the Portal-to-Portal Act, which abolished all claims for minimum or overtime wages for any preliminary or postliminary activity engaged in by the employee, defining noncompensable activities to include "walking , riding, or traveling to and from the actual place of performance of the principal activity or activities" and "activities which are preliminary or postliminary to" the principal activities. *See* 29 U.S.C. § 254(a)(2); *see also* Ellen C. Kearns, *The Fair Labor*

---

[6] It is unclear, with the instant Motion, if Plaintiffs are also seeking Summary Judgment the alleged failure to compensate for driving between jobs.

*Standards Act*, p.19-20, 499. In 1996, Congress further emphasized that travel was not to be compensated when it passed the Employee Commuting Flexibility Act, which "exempts employers from compensating employees for the use of an employer's vehicle for travel (and for activities incidental to that use)." *Singh v. City of N.Y.*, 524 F.3d 361, 369 (2nd Cir. 2008).[7]

Here, Plaintiffs purportedly claim that they completed "principal activities" at their homes prior to driving to their first job site of the day and, as a result, this "work" converts normally noncompensable travel time into compensable time under the "continuous workday doctrine." Plaintiffs argue that because they allegedly began their workday at home mapping out their routes, making phone calls, and/or loading their tools, any travel that follows should be compensable. (Plaintiffs' Memo, pp. 4-7).

When faced with a factually similar situation as Plaintiffs allege in this matter, the United States Court of Appeals for the Ninth Circuit upheld the District Court's grant of summary judgment for the employer. *Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046 (9th Cir. 2010). In *Rutti*, the plaintiff asserted claims for unpaid wages under the FLSA based upon allegations "that he spent time in the morning receiving assignments for the day, mapping his routes to the assignments, and prioritizing the jobs. This included time spent logging on to a hand-held computer device provided by Lojack that informed him of his jobs for the day," as well as time commuting from home to his first job site in a company-owned vehicle, and home from his last site in that same vehicle. *Id.* at 1049. The plaintiff argued that these activities created a "continuous workday" making his time spent commuting compensable. The District Court granted the defendant's motion for partial summary judgment, and the Court of Appeals upheld the District Court because commuting is not compensable under the Portal-to-Portal Act as amended by the Employment Commuter Flexibility Act and, further, because the activities

---

[7] This opinion was authored by then Judge, now Justice Sotomayor.

described by the plaintiff were incidental to the use of the employers' vehicle. *Id.* at 1051-54. The Court further opined that, even if the preliminary activities were not incidental and were considered work, they were *de minimis* in nature and, therefore, not compensable. *Id.* at 1057-58.

In *Kuebel v. Black & Decker, Inc.*, the Court held that "completing service or allocation reports, checking voicemail and checking email" does not make the home "a job site for purposes of counting work or travel." 2009 WL 1401694, at *9 (W.D.N.Y. May 18, 2009). The *Kuebel* Court relied upon a Department of Labor determination that "performing work at home did not 'affect the compensability of travel time' to different job locations." *Id.*

Finally, the legislative history of the Employees Commuting Flexibility Act of 1996, which amended the Portal-to-Portal Act, made clear that "merely transporting tools or supplies should not change the noncompensable nature of travel." H.R. Rep. No. 104-585, at 5 (1996). *See also Singh*, 524 F.3d at 369.

Here, Plaintiffs fail to address, or even acknowledge, the Portal-to-Portal Act and the Employees Commuting Flexibility Act in their Motion. Plaintiffs, however, seek to circumvent the mandates of these statutes by alleging that they, and the absent Class Members, loaded their vehicle every morning and unloaded their vehicle every night. (*See* Plaintiffs' Memo, pp. 6-7). In support of their argument, Plaintiffs merely cite to what they allege was Defendants' policy requiring the loading and unloading of their equipment from their company-owned vehicles. (*Id.*). This alleged policy is the only evidence offered by Named Plaintiffs of this alleged conduct by the absent Class Members. Further, without any citation to legal authority and contrary to the authority cited above, Plaintiffs baldly assume that these alleged activities are compensable. (*Id.*).

8

Notwithstanding the alleged policy, Defendants Yannantuono and Heaberlin testified that DirectSat's Illinois technicians had no such requirement to load and unload the equipment to and from their vehicles on a daily basis. RSF, ¶¶ 13, 65. Plaintiffs simply ignore these material disputed facts, offer no evidentiary support as to the remaining Class Members, and fail to cite any legal support for their position.

Even accepting Plaintiffs' claim, *arguendo*, and this Court finds that the above-described activities constitute compensable "work" under the IMWL and FLSA, Courts have recognized that there are instances in which an activity may be considered compensable work and yet is so *de minimis* that an employer is not required to compensate. *See Rutti*, 596 F.3d at 1057 (finding that receiving, mapping, and prioritizing jobs and routes for assignment were related to the employees commute and therefore presumptively noncompensable, and further finding that even if theses activities could be deemed as integral to his principal activities there was nothing to show these activities took more than a few minutes making it a *de minimis* amount of time).

"An important factor in determining whether a claim is *de minimis* is the amount of daily time spent on the additional work. . . . Most courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable." *Lindow v. United States*, 736 F.2d 1057, 1062 (9th Cir. 1984). S*ee also, e.g., Frank v. Wilson & Co.*, 172 F.2d 712, 716 (7th Cir. 1949) (five minutes of required preliminary or preparatory activity each day held to be *de minimis*); *E.I. du Pont de Nemours & Co v. Harrup*, 227 F.2d 133, 135-36 (4th Cir. 1955) (10 minutes); *Green v. Planters Nut & Chocolate Co.*, 177 F.2d 187,188 (4th Cir. 1949) ("obviously" that 10 minutes is *de minimis*); *Carter v. Panama Canal Co.*, 314 F. Supp. 386, 392 (D.D.C. 1970) (2 to 15 minutes).

9

Indeed, the Western District Court of Wisconsin, in a 2008 opinion, noted that, "although the Seventh Circuit has not addressed the *de minimis* exception other circuit courts have" and found the reasoning of the Ninth Circuit Court in *Lindow v. United States* to be "persuasive and reasonable to follow." *Hoyt v. Ellsworth Coop. Creamery*, 579 F. Supp. 2d 1132, 1138. In *Lindow*, the Ninth Circuit identified a four part test for deciding when work may be deemed *de minimis*. *Lindow*, 736 F.2d at 1062. "The first factor is 'the amount of time spent on the additional work. . . .The second factor is 'the practical administrative difficulty of recording the additional time'. The third is 'the aggregate amount of compensable time'. And the fourth is the 'regularity of the additional work.'" *Id.* Similarly, the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.* reasoned that "overtime compensation for 'a few seconds or minutes' is *de minimis* 'in light of the realities of the industrial world.'" *Id.* at 1063. Plaintiffs completely ignore the *de minimis* nature of their alleged acts, assuming the allegations are even true.

Further, ironically, Plaintiffs seek to assert liability upon Defendants based upon an alleged policy of DirectSat and the claim and/or assumption of blind adherence to that alleged policy by all absent Class Members. Once again, Plaintiffs offer no evidence regarding the conduct of the approximately 500 un-named Class Members. This notwithstanding, in claiming unpaid overtime, Plaintiffs ignore Defendants' admitted policy that all Illinois technicians during the Class Period were to record all of the hours that they worked and that Illinois technicians were paid for all of the time they recorded. RSF, ¶¶ 17, 19, 25-27, 41, 44. As with their record citations, Plaintiffs seek to "pick and choose" whatever policies they feel are supportive of their claims, yet conveniently ignore any policies that are contrary to their claims.

### C. This Court Must Deny Plaintiffs' Claim for Defendants Alleged Failure to Keep Accurate Records

Plaintiffs next seek to assert liability against Defendants for their alleged failure to keep accurate time records. (*See* Plaintiffs' Memo, p. 5). Plaintiffs conveniently ignore that there is no private cause of action for the failure to keep records under the FLSA. *Floyd v. Excel Corp.*, 51 F.Supp.2d 931, 934 n. 5 (C.D.Ill. June 10, 1999); *see also*, *O'Quinn v. Chambers County, Texas*, 636 F.Supp. 1388, 1392 (S.D.Tex. 1986); *East v. Bullocks, Inc.*, 34 F.Supp.2d 1176, 1182-3 (D.Ariz. 1998). Further, Plaintiffs cite to no authority, because there is no authority, that Defendants' method of tracking Illinois technicians' time (*i.e.*, requiring technicians to record their hours worked on a timesheet and to sign the timesheet at the end of the week) is violative, on its face, of either the Illinois Act or the FLSA. Rather, Plaintiffs choose to rely upon unsupported, bald assertions in an effort to support their baseless claim.

Plaintiffs also attempt to support their claim with a demonstrative chart allegedly based upon Defendants' payroll records and a third party's GPS records for the week of April 26, 2008.[8] (*See* Plaintiffs' Memo, p. 7). However, nowhere in any of Plaintiffs' filings do they, nor can they, describe the interpretation of the GPS records from non-party Trimble, the vendor which maintained the GPS, as Plaintiffs failed to take the deposition of any representative of Trimble who can explain how the documents attached to Plaintiffs' Motion are to be read and/or interpreted.

---

[8] Defendants reference GPS records produced by third party Trimble as records produced by Defendants. (*See* Plaintiffs' Memo, p. 9). This is simply not accurate, as these records were produced by third party Trimble. Further, Plaintiffs rely upon the Declaration from Michael Granuff of Trimble in an effort to impute liability on Defendants, but ignore a subsequent Declaration from Mr. Granuff, attached to Defendants' RSF as Exhibit A, which clarifies and explains how DirectSat received GPS records during the time period relevant to this matter. *See also* Declaration of Jeff Winterbottom attached to Defendants' RSF as Exhibit B explaining DirectSat's use of GPS records during the time period relevant to this matter. Once again, Plaintiffs "pick and choose" the information they believe is supportive and ignore the contrary information that is fatal to their claim.

Additionally, Plaintiffs once again offer as evidence Defendants' policies alone as alleged proof of liability as to absent Class Members. That is, Plaintiffs allege that because DirectSat had a policy that technicians are not to use their company owned work vehicles except for work related business, all of these "alleged" hours indicated by Plaintiffs' interpretation of Trimble's GPS reports must necessarily be compensable time. Plaintiffs' assumption, however, is flawed in that: (1) it ignores the Portal-to-Portal Act argument outlined above; (2) it assumes that technicians never violated this policy, an assumption that is contradicted by Plaintiffs' own admissions that some technicians not only violated this policy, but were caught and disciplined for the violation (s*ee* Plaintiffs' Memo, Gr. Ex. 28, D020399-D020410); and (3) Plaintiffs fail to offer any evidence by the Class Members referenced in this chart who are all un-named Plaintiffs.

Finally, the alleged demonstrative chart included in Plaintiffs' Memorandum once again highlights the inherent conflict in Plaintiffs' claims. Plaintiffs rely upon DirectSat's policy that Illinois technicians are not to use company owned vehicles for anything other than work related activities. Plaintiffs' also baselessly rely upon their own unexplained interpretation of Trimble's GPS records in an effort to support their Motion for Summary Judgment. However, once again, Plaintiffs ignore Defendants' policy that Illinois technicians were specifically instructed to record all hours worked on their timesheets. RSF, ¶¶ 17, 19, 25-27, 41, 44. They also ignore that Illinois technicians were paid for all hours recorded on their timesheets. RSF, ¶ 61. Consistent with their prior behavior, Plaintiffs' seek to "pick and choose" the policies that they believe are supportive of their claim and ignore the policies that they believe are contrary to their claims. This conflict, at the minimum, raises a material issue of disputed fact, necessitating that Plaintiffs' Motion be denied.

D.  **Genuine Issues of Material Fact Exist to Preclude Summary Judgment on Plaintiffs' Claim for Failure to Pay Plaintiffs for All Time Worked.**

Plaintiffs' final argument in their Motion for Summary Judgment is that Defendants failed to pay Class Members as required by the IMWL and the FLSA. Plaintiffs correctly state that employers are required to pay all non-exempt employees at a premium rate of one-and-a-half times the regular rate for all hours worked over 40 hours during a work week. (*See* Plaintiffs' Memo, p. 10). Plaintiffs also admit that when any Class Member submitted a timesheet indicating they worked more than 40 hours in the work week, the Class Member was paid overtime properly under both statutes. (*Id.*). Notwithstanding, this entire section of Plaintiffs' Memorandum relies solely upon the unsupported conclusion that "Named Plaintiffs provide irrefutable evidence Defendants' violated the IMWL and FLSA". Plaintiffs, however, failed to identify the evidence that supports this conclusion. Further, as discussed above, and in Defendants' Motion for Summary Judgment and Motion for Decertification, Plaintiffs have offered no evidence regarding un-named Class Members at all. Therefore, this Court must not only deny Plaintiffs' Motion for Summary Judgment, but must grant Defendants' Motion for Summary Judgment, at least to the absent Class Members.

IV. **Conclusion**

For all of the forgoing reasons, Defendants respectfully request that, because disputed issues of material facts exist, this Court deny Plaintiffs' Motion for Partial Summary Judgment, and, for the arguments set forth in Defendants' Motion for Summary Judgment (Docs. 178, 179), summarily enter judgment in favor of all Defendants. Alternatively, Defendants respectfully request that this Court grant their Motion for Decertification (Docs. 182, 183).

                                                  Respectfully submitted,

                                                  */s/ Colin D. Dougherty*

                                                  Jason S. Dubner (ARDC# 06257055)
                                                  Ursula A. Taylor (ARDC # 6287522)
                                                  Butler Rubin Saltarelli & Boyd
                                                  70 West Madison Street, Suite 1800
                                                  Chicago, IL 60602
                                                  (312) 444-9660

                                                  Eric J. Bronstein
                                                  Colin D. Dougherty
                                                  Gregory S. Voshell
                                                  Elliott Greenleaf & Siedzikowski, P.C.
                                                  Union Meeting Corporate Center
                                                  925 Harvest Drive, Suite 300
                                                  Blue Bell, PA 19422
                                                  (215) 977-1000

                                                  Counsel for Defendants

DATED: July 29, 2010

## **CERTIFICATE OF SERVICE**

I, Colin D. Dougherty, hereby certify that, on this date, I caused the foregoing to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document, upon the following:

| | |
|---|---|
| Jac A. Cotiguala, Esquire | Ryan F. Stephan, Esquire |
| Jac A. Cotiguala & Associates | STEPHAN ZOURAS, LLP |
| 431 South Dearborn Street | 205 N. Michigan Avenue |
| Suite 606 | Suite 2560 |
| Chicago, IL 60605 | Chicago, IL 60601 |
| Attorneys for Plaintiffs | Attorneys for Plaintiffs |

*/s/ Colin D. Dougherty*
COLIN D. DOUGHERTY

DATED: July 29, 2010