IN THE UNITED STATES COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GERALD FARMER, POMPEY HICKS, ANTWON WILLIAMS, individually, and on behalf of all others similarly situated, and STEVEN EMLING, SILAS JUNIOUS, and ODELL STIFFEND, individually,<br><br>Plaintiffs,<br><br>v.<br><br>DIRECTSAT USA, LLC, UNITEK USA, LLC, JAY HEABERLIN, LLOYD RIDDLE, and DAN YANNANTUONO,<br><br>Defendants. | Case No. 08 CV 3962<br><br>Judge John Z. Lee<br><br>Magistrate Judge Maria Valdez |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO RECONSIDER ORDER DENYING MOTION FOR DECERTIFICATION**

## INTRODUCTION

Defendants erroneously argue that "binding" and "controlling" authority from the Seventh Circuit in *Espenscheid v. DirectSat* mandates decertification of this, and all other wage and hour class actions against them. (*See* D.E. 371 at 1.) Defendants overlook that the Seventh Circuit merely found no abuse in discretion decertifying a class action containing twelve (12) subclasses under federal law and the wage laws of three different states for want of a manageable trial plan. The *dicta* regarding proof of damages in *Espenscheid* did not overrule the Seventh Circuit's prior holdings in *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010), finding error in the dismissal of viable common claims because of heterogeneous sub-claims, or *Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 909 (7th Cir. 2012), finding representative declarations from approximately

1

10% of class members sufficient. Defendants also overlook the significant differences between this case and the *Espenscheid* case and that this Court has repeatedly found the trial plan for this class action manageable.

As this Court previously recognized, this Illinois Minimum Wage Law, 820 ILCS ¶ 105/1 *et seq.* ("IMWL"), class action presents a common, predominate and straightforward issue; namely, whether Defendants' admitted requirement that their Illinois employees drive to the first job of the day and from the last job of the day, off-the-clock and without pay, violates the IMWL where the IMWL rejects the federal Employee Commuter Flexibility amendments to the FLSA. None of the *Espenscheid* class claims addressed this issue of Illinois law. Furthermore, the speculative issues regarding damages, identified in the *Espenschied* opinion, are managed in this case through the use of a retired U.S. Department of Labor ("U.S. DOL") investigator along with empirical GPS data from the technicians' work vehicles evidencing off-the-clock drive times.

## LEGAL STANDARD

As has been previously explained in this case, a motion to reconsider serves the limited function of allowing the Court to correct a manifest error of law or fact or to consider newly discovered material evidence. *Farmer v. DirectSat*, 08-cv-3962 at 2, D.E. 82 (N.D. Ill. June 29, 2009) (denying Defendants' motion to reconsider class certification).[1] Motions to reconsider are granted only in "rare" circumstances. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990). A party requesting reconsideration bears a heavy burden and its motion must be supported by a

---

[1] This Court also denied Defendants' subsequent motion to again reconsider class certification after the close of discovery. *Farmer v. DirectSat*, 08-cv-3962 at 33-43, D.E. 212 (N.D. Ill. October 4, 2010).

2

showing of extraordinary circumstances. *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir.1996). Parties may not use a motion for reconsideration to re-litigate previously-rejected arguments. *Id.* Motions for reconsideration serve the very limited purposes of correcting manifest errors of law or fact or presenting newly discovered evidence. *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 252 (7th Cir.1987).

Reconsideration motions are examined with an even more critical eye where, as here, a newly-assigned judge is called upon to examine a ruling by a different member of the Court. "[T]he law of the case doctrine . . . reflects the rightful expectation of litigants that a change of judges midway through a case will not mean going back to square one." *Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir.1997). The second judge may alter previous rulings in certain circumstances, but "he is not free to do so . . . merely because he has a different view of the law or the facts from the first judge." *Id.* (quoting *Williams v. C.I.R.*, 1 F.3d 502, 503 (7th Cir.1993). "The successor judge should depart from the transferor judge's decision only 'if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it.'" *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 902 (7th Cir. 2010) (citation omitted); *In re Sulfuric Acid Antitrust Litigation*, 847 F.Supp.2d 1079, 1082 (N.D.Ill. Dec. 12, 2011).

### ARGUMENT

Despite Defendants' arguments to the contrary, the *Espenscheid* decision did not change the facts or applicable law in this case. *Espenscheid* did not overrule the holding in *Alvarez v. City of Chicago, supra*, supporting the use of bifurcation or sub-classes to

3

promote efficiency and did not overrule the holding in *Ross v. RBS Citizens, N.A.*, *supra*, finding declarations from approximately 10% of a single state IMWL class sufficiently representative of the class. The *Espenscheid* decision simply held that district judges have the discretion to decertify a class action when plaintiffs refuse to modify their trial plan to one that the trial judge finds manageable. 2013 WL 407446, at *5 (7th Cir. Feb. 4, 2013).

The trial plan in this case differs from the one in *Espenscheid* in that it is manageable and has been so found repeatedly. It is more focused, brought as a single class action under one state law, and Plaintiffs plan to reinforce the deposition or live testimony of eight technicians with empirical GPS evidence from the work vehicles of 40 technicians that Defendants' own expert admits is statistically significant for the class. Furthermore, to assist the Court and jury, Plaintiffs will proffer testimony from a retired U.S. DOL investigator's comparison of that GPS evidence to the payroll records of the drivers.

## I. Binding Precedent Supports Class Treatment of Unpaid Wage Actions with Common Policies

The *Espenscheid* plaintiffs could have proceeded as a class action but they refused to bifurcate liability from damages, refused to subclass the various issues under the FLSA and three state laws, and failed to provide any reasonable alternative. *Id.* at 5. The Seventh Circuit's decision provides no new law. Rather it simply reaffirms the trial court's duty to efficiently resolve common claims and discretion to determine whether sufficiently representative evidence exists in light of the particular claims and defenses at issue.

In *Alvarez v. City of Chicago* the trial court was faced with employees claiming that their employer miscalculated their overtime rates in ten different ways. 605 F.3d 445, 446 (7th Cir. 2010). While all employees had some claims not all had every claim. *Id.* The district court dismissed the action, finding the claims "hopelessly heterogeneous". In reversing, the Seventh Circuit supported the use of sub-classes and special masters to make the class action more manageable and efficient in the trial court. *Id.* at 448-449, n.1.

In *Ross*, the Seventh Circuit affirmed class certification for employees claiming violations of the FLSA and IMWL. 667 F.3d at 902. The Court found representative declarations from approximately 10% of the class sufficient to affirm certification under a common policy despite individual variances in the testimony. *Id.* at 909-910. As phrased by one court, the question is whether the "***legally significant*** facts across plaintiffs are sufficiently similar as to permit fair adjudication as to all plaintiffs on the basis of the representative evidence of a few?" *Wilson v. Guardian Angel Nursing, Inc.*, 2009 WL 790107 (M.D.Tenn. Mar. 24, 2009) (emphasis added) (citing *Reich v. Gateway Press*, 13 F.3d 685, 701 (3rd. Cir.1994). The overriding factors a court considers when making its determination are: (1) reducing the burden on plaintiffs through the pooling of resources; and, (2) efficiently resolving common issues of law and fact that arise from the same illegal conduct. *Hoffman–LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

II.  **Defendants Present No New Facts or Law That Render This Court's Prior Orders Manifest Error**

Defendants provide this Court with thirty (30) pages of rehashed argument regarding the application of one recently decided Seventh Circuit case. (D.E. 371.) Defendants identify two depositions that were not before the Court when it made its prior

5

decisions (D.E. 371 at 8 n.3) but fail to identify any new facts elicited from the depositions. For example Defendants admit:

> In prior certification rulings, the Court already recognized this variance among class members' testimony (see D.E. 40 at 7; D.E. 212 at 34-35, 42), and this variance is only more pronounced with the additional depositions of Mr. Bodie and Mr. Myers.

*E.g.* D.E. 371 at 26

Judge St. Eve, in a well-reasoned 43-page opinion, denied Defendants' second motion to reconsider class certification, finding that the facts, evidence and trial plan demonstrate this case is ideally-suited for class treatment. D.E. 212 at 28-43. Following the close of discovery in this case, Defendants moved for decertification and Judge St. Eve held Plaintiffs were still similarly situated in all material respects and could establish class-wide liability and damages at trial:

> Plaintiffs have identified company-wide policies and practices that resulted in Defendants' failure to compensate Plaintiffs for work performed, and have also submitted an expert report opining on the hours of off-the-clock work performed by class members. As the Court concludes below, class treatment is therefore appropriate.

*Id.* at 29.

Judge St. Eve found that all of Defendants' technicians: (1) are paid in the same way (*id.* at 7-8); (2) have their time tracked in the same manner (*id.* at 8); (3) are given the same directive to "record all time worked" (*id.* at 10-13); (4) are instructed not to report time before arriving at the first location or after leaving the last location (*id.*); (5) are only paid for time recorded on their timesheets (*id.* at 8-10); (5) complete timesheets in the same way (*id.*); (6) have their timesheets processed in the same way (*id.*); and, (7) have their overtime rate calculated in the same fashion (*id.* at 7-10). Defendants provide no new evidence to dispute Judge St. Eve's findings of fact.

6

As Judge St. Eve astutely found, every class member shares the same common legal theory: Defendants uniformly direct all class members to perform specific tasks for Defendants' benefit before arriving at their first job and after leaving the last job of the workday, but admittedly never pay for these required activities. *Id*. at 34-35. Thus, all class members have this identical experience for all relevant purposes. They are all subject to the Defendants' same uniform policy and practice of denying pay for such time worked. As Judge St. Eve found, Plaintiffs can present common evidence establishing liability at trial:

> . . . Plaintiffs cite evidence that establishes that each of the Plaintiffs performed the same "off-the-clock" work including: (i) driving to their initial job, (ii) driving home from their last job, (iii) unloading and loading Defendants' equipment, (iv) receiving daily assignments, and (v) calling their first customer of the day. While the Named Plaintiffs have provided varying testimony pertaining to discrete discussions with their supervisors regarding the recording of their hours, ***Plaintiffs also point to evidence in the record that two executives testified that DirectSat told employees that arrival at the first customer job or the warehouse should mark the start of their work day on their time sheets. Plaintiffs also point to company-wide policies that require Plaintiffs to unload their vehicles each night and to testimony showing that DirectSat required technicians to call their first customer prior to leaving for the daily assignments.*** Moreover, a number of the Named Plaintiffs testified that they were instructed not to include drive time on their time sheets. In short, Plaintiffs have demonstrated that the Named Plaintiffs' claims are typical of the class members because they arise from the same practices and policies.

*Id*. at 34-35 (citations omitted) (emphasis added). This is particularly true where, as here, Defendants' own GPS data in conjunction with highly-qualified expert testimony,[2]

---

[2] In addition to rehashing virtually every failed argument made throughout this litigation, Defendants improperly exploit their motion for reconsideration as an excuse to continue arguing their motions in limine, including their ongoing specious attack on Plaintiffs' expert, Gerald Becker, a veteran former investigator with the United States Department of Labor (DOL) who has conducted over 3,000 investigations. D.E. 371 at 9, FN. 4 & 23, fn.15. In *Espenscheid*, Judge Posner praised the DOL and its investigators as qualified, competent and experienced enforcers of the wage laws. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 776 (7th Cir. 2013).

7

establishes the nature and extent of Plaintiffs' damages under the "just and reasonable inference" standard[3]:

> *Plaintiffs have adduced enough evidence to permit a reasonable jury to conclude that they have demonstrated the amount and extent of work performed by Plaintiffs by a matter of just and reasonable inference.* Plaintiffs have provided declarations from each of the six Named Plaintiffs, who specifically aver to the total hours they worked per week. (R. 176-3, Exs. 14-19.) In addition, five of the six Named Plaintiffs submitted affidavits containing assertions regarding the approximate number of hours they worked off the clock each week. *Id.* Each of the Named Plaintiffs also specifically averred to each of the job functions that they performed during those hours. *Id.* This is unlike the unsupported and vague deposition testimony in *Wood. Plaintiffs have also produced payroll reports and GPS records which they contend further support their claim for damages.* Defendants take issue with the use of GPS reports to establish damages because Defendants maintain that the GPS reports do not document whether Plaintiffs used company vans for personal reasons. Given that Defendants have a policy in place prohibiting employees from using company vehicles for personal purposes, however, this is a question of fact for the jury.

*Id.* at 31, 14 (emphasis added).

Finally, citing Seventh Circuit precedent,[4] Judge St. Eve had no difficulty determining that whatever "variances" may exist in experiences of class members, which

---

[3] Under this standard, which the Supreme Court established over 65 years ago in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), "Plaintiffs need only 'produce[] sufficient evidence to show the amount and extent of [their unpaid] work as a matter of just and reasonable inference. *See People ex rel. Illinois Department of Labor v. 2000 W. Madison Liquor Corp.*, 394 Ill. App. 3d 813, 818-819 (1st Dist. 2009) (adopting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.'" D.E. 30 at 42 (internal citations omitted); *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013) (citations omitted) ("The unreported time for each employee could be reconstructed from memory, inferred from the particulars of the jobs the technicians did, or estimated in other ways—any method that enables the trier of fact to draw a 'just and reasonable inference' concerning the amount of time the employee had worked would suffice.").

[4] *See, e.g., McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 490-491 (7th Cir. 2012) (rejecting claim that all class members must have been affected by challenged

8

<-- -->

are present in literally every wage-and-hour class action, they are not legally significant to the particular claims at issue and eclipsed by Defendants' overarching relevant policies, as admitted by Defendants' own executives:

> Discovery has shown that there are class-wide questions that predominate over individualized questions. While Plaintiffs have not identified specific written policies with regard to recording time before arriving at or subsequent to leaving a specific job, Plaintiffs have pointed to executive testimony evidencing the existence of such a policy. (R. 189, Pls. Resp. at 11.) In addition, Plaintiffs have pointed to Defendants' policies requiring technicians to call dispatch or the first customer of the day prior to arrival at the customer's location and to remove tools or equipment from the vehicles at the end of the day. Plaintiffs have further identified common evidence demonstrating that Defendants did not compensate the Named Plaintiffs for the same tasks: (i) driving to their first customer job, (ii) driving home from their last customer job, (iii) loading and unloading Defendants' equipment, (iv) receiving daily assignments, and (v) calling their first customer of the day.

*Id.* at 41 (emphasis added).

In sum, Judge St. Eve determined – based on her considerable experience with the evidentiary record and class certification decisions – that common proof could establish that all class members were victimized in the same way by the same unlawful practice emanating from the very top of Defendants' corporate hierarchy; namely, Defendants' admitted failure to **ever** record or pay for specific, identifiable and common tasks they indisputably required class members to perform every workday. While employers can always point to inconsequential differences and instances where class members suffered no damages because they disobeyed the employer's illegal directives,[5] Judge St. Eve

---

practices or suffered the same loss, and holding that the issue of whether the practice itself is lawful is common to all).

[5] Defendants fail to identify a single class member who they claim did not perform the unpaid work at issue or received pay for it and therefore, suffered no damages. Where "substantial common issues ... outweigh the single variable of damages amounts", individual damages determinations do not defeat certification. *Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008).

9

correctly concluded that their overwhelming relevant similarities "outweigh their differences." D.E. 212 at 43. Judge St. Eve reached her conclusion with full knowledge of Plaintiffs' trial plan which, by virtue of expert testimony and GPS evidence, is more robust that the plans applied by dozens of trial courts when adjudicating similar claims, including *Monroe v. FTS, USA*.[6] (D.E. 212 at 31); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (8 testifying out of 300 employees); *Ross*, 667 F.3d at 909 (89 out of 1,129 Illinois employees); *Reich v. Southern New England Telecomms. Corp.*, 121 F.3d 58, 66-68 (2d Cir. 1997) (holding that trial plan consisting of 39 testifying employees out of 1,500 was a sufficient representative sampling); *Donovan v. New Floridian Hotel, Inc.*, 676 F. 2d 468, 472-73 (11th Cir. 1982) (23 testifying employees out of 207 found sufficient).

### III. Judge Gottschall's Order Granting Class Certification on Behalf of a Similarly-Situated Class of Defendants' Technicians in *Jacks v. DirectSat*

On June 19, 2012, Judge Gottschall granted class certification in a virtually identical action against the same Defendants, but for a more recent time period.[7] Exhibit A at 1-2. Judge Gottschall independently entered her order with full knowledge of the Supreme Court's decision in *Dukes v. Wal-Mart* and Judge Crabb's decertification order in *Espenscheid*. *Id.* at 2, fn. 1, 4, 6, 9, 12, fn. 2. Like Judge St. Eve, Judge Gottschall

---

[6] In this similar FLSA action against FTS and Unitek, Plaintiffs successfully tried their claims as a class action through the testimony of select representative plaintiffs, Defendants' agents, and Defendants' records. *See* Exhibit C. FTS, USA and DirectSat, USA are both subsidiaries of and rely on the same payroll policies and practices from Unitek, USA now Unitek Global Services.

[7] This second action was necessitated as a result of Defendants' flagrant and ongoing refusal to rectify their illegal pay scheme and conform their conduct with the mandates of Illinois wage law. In their motion to consolidate that action with this one, Defendants admitted that the class claims in both actions have "identical legal claims" and allege "identical facts against the same five Defendants." (D.E. 138 ¶ 10.)

found Defendants' arguments against certification unpersuasive. She too found Plaintiffs were similarly situated in all material respects. In correctly concluding that Defendants' challenged standardized practice, as admitted by their own executives, presents a common issue establishing a basis for class-wide liability, Judge Gottschall found:

> The evidence submitted ties the alleged unrecorded time to company-wide policies. For example, DirectSat's "Cell Phone Policy" required technicians "to call their customers at the beginning of the day to acknowledge their appointment." (Ex. E, ECF No. 24.) The "Company Owned vehicle Policy" required them to maintain and clean their vehicles and to unload them at the end of the day. (Ex. G, ECF No. 24.) In deposition testimony, *a DirectSat executive stated that the company's policies were uniform for all technicians in Illinois, and that technicians' work days usually began "when they [got] to their first job" and ended when they completed their last job.* (Reply Br. Ex. B (Dep. Daniel Yannantuono, Feb. 24, 2011) 49:16, ECF No. 50.) *DirectSat's written policies confirm this.* (Ex. L (Earning and Reporting Hours of Work Policy), ECF No. 24.) Wages of all Illinois technicians were calculated according to a standard "pay for performance" policy, which took into account the number of jobs completed and the number of hours worked, and technicians were warned that failing to meet productivity standards could result in termination of employment. (Defs.' Br. Opp. Mot. Class Certification Ex. A-2 (Handbook) 25, ECF No. 38.) Because Plaintiffs claim that these standardized policies forced them to work off the clock, and these policies were applied to all technicians in Illinois, the court concludes that the named Plaintiffs' claims are typical of those of the class members.

*Id.* at 7 (emphasis added).

Rejecting the same "idiosyncratic behaviors of particular technicians" relied upon by Defendants here as a basis for decertification, Judge Gottschall held that the common question of the legality of Defendants' "top-level corporate policies" predominated. *Id.* at 10-11. Moreover, Judge Gottschall found that a jury could resolve the legality of Defendants' corporate policy based on ample common proof. *Id.* at 11. While employees can always "respond" differently (*i.e.*, disobey) to their employer's common directives, Judge Gottschall made clear that this unremarkable observation – which is true

11

in every class wage case – does not preclude certification. *Id.* at 11-12.[8] As the Seventh Circuit explained last year, it is sufficient that the challenged practices themselves "can most efficiently be determined on a class-wide basis." *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012).

Defendants' ardent stance that *Espenscheid* controls the outcome rests upon on a mischaracterization of the facts in that case. While Defendants represent, without citing the decision itself, that *Espenscheid* involved "the same wage and hour claims" as the case at bar (D.E. 371 at 19), Judge Gottschall pointed out some of the glaring differences when Defendants made the same representations to her. As Judge Gottschall noted, *Espenscheid*, in addition to a nationwide collective action under the FLSA, involved wage claims brought under the wage law of three states, consisted of 12 certified Rule 23 subclasses and comprised 2,300 class members. Exhibit A at 2, fn.1. Unsurprisingly, the Court found the proposed *Espenscheid* classes far "more unwieldy than the class proposed by Plaintiffs" in *Jacks*. Exhibit A at 12, fn. 2.

### IV.   Plaintiffs' Trial Plan Neutralizes the *Espenscheid* Problems

Unlike the *Espenscheid* plaintiffs, Plaintiffs in the case at bar present a trial plan that pursues class claims under one state law, the IMWL, with proof of common policies and practices applied to all employees in Illinois. Additionally, Plaintiffs in the case at bar, reinforce their proof with empirical GPS evidence and expert analysis by a DOL investigator.

#### A.   The *Espenscheid* Classes Were Large and Diverse

A plain reading of the *Espenscheid* opinion reveals it was the result of plaintiff

---

[8] Surprisingly, given the identical nature of the legal claims and facts of this case and the *Jacks* action, Defendants have not filed a motion to decertify the class in *Jacks v. DirectSat*.

counsel's disregard of the district court's suggestion to focus trial through subclasses and bifurcation of liability and damages. *Espenscheid*, 705 F.3d at 775-776. The plaintiffs ignored the court's suggestions on how to manage the trial, and insisted on a trial plan "based on the assumption that all plaintiffs and class members have claims in every subclass." *Espenscheid v. DirectSat USA, LLC,* 2011 WL 2009967, at *5 (W.D. Wis. May 23, 2012). The *Espenscheid* plaintiffs took an "all or nothing" approach, attempting to prove every conceivable wage claim possessed by each class member. *Id.* at 7.

Judge Posner made clear that the crux of the Court's decision to uphold decertification was plaintiff counsel's refusal to present *representative* evidence that could establish liability for such a large and diverse class:

> With no *genuinely representative evidence* having been suggested by class counsel, 2341 separate hearings loomed even if the district judge bifurcated the proceedings – that is, scheduled separate, successive trials on liability and damages, a common practice in complex litigation. Bifurcation would not eliminate variance in damages across class members, but once liability is established damages claims can usually be settled with the aid of a special master, and trials thus avoided, *Carnegie v. Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 140-41 (2d Cir. 2001), as in such cases as *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 471 (5th Cir. 1986), *and New York City Asbestos Litigation*, 142 F.R.D. 60 (E. & S.D.N.Y. 1992).

*Espenscheid*, 705 F.3d at 775. As this passage demonstrates, Judge Crabb's decision, affirmed by the Seventh Circuit, rejects *unrepresentative* testimony. *Espenscheid v. DirectSat USA, LLC,* 2011 WL 2009967, at *4-5 (W.D. Wis. May 23, 2012). But Judge Posner affirms that representative evidence *is* properly used to establish unpaid time worked on a class-wide basis:

> The unreported time for each employee could be reconstructed from memory, inferred from the particulars of the jobs the technicians did, or estimated in other ways—any method that enables the trier of fact to draw

13

> a "just and reasonable inference" concerning the amount of time the employee had worked would suffice." *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 669 and n. 2 (7th Cir. 2010); *Brown v. Family Dollar Stores of Indiana, LP*, 534 F.3d 593, 595 (7th Cir. 2008); *see Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946).

*Espenscheid*, 705 F.3d at 775.

### B. This Class Action Is Narrowly Focused and Brought Only Under Illinois Law

The inapplicability of *Espenscheid* is further illustrated by the myriad of differences between that case and the case at bar. In *Espenscheid*, the class members worked out of dozens of locations throughout the United States, brought claims based on the FLSA and the state wage laws of Minnesota, Wisconsin and Pennsylvania, and sought damages for undefined work throughout the recorded workday, along with damages for Defendants' miscalculation of wages actually paid. *Espenscheid v. DirectSat USA, LLC*, 2011 WL 2009967, at *1-2 (W.D. Wis. May 23, 2012).

In this case, the certified class consists of only 500 employees (approximately 1/5 the size of *Espenscheid*). All class members work in Illinois, advance the same legal theory, assert violations of the same statute, and challenge the same corporate-wide practice which Defendants admit applies to each one of them. Unlike the missteps committed by counsel in *Espenscheid*, Plaintiffs' counsel here have submitted a trial plan for representative evidence which is fully consistent with this Court's directives and goes beyond what is required. *See* D.E. 345, Parties' Pre-Trial Order at 5-13, 17-33.

### C. Plaintiffs' Provide Further Support With GPS and Expert Evidence

Though liability and damages are lawfully proven using a trial plan which, like in the *Monroe* trial, consists of testimony from representative Plaintiffs, Defendants' agents

and Defendants' records, Plaintiffs here have gone much further. Former DOL Investigator Gerald Becker, Plaintiffs' expert, compared all the available GPS records of approximately forty (40) class member work vehicles with Defendants' records of the work time of those technicians. (D.E. 294-2 at 11.)[9] Defendants' own expert statistician testified that the 40 GPS records Mr. Becker analyzed provide a sufficient sample size to extrapolate damages to a class of over 500 members for the time period of this lawsuit. Exhibit B, Depo. Crandall 203:22-210:2. After accounting for the unrecorded work time at issue, all of which is captured by Defendants' GPS records, Mr. Becker, applied his extensive knowledge, training and experience with the DOL and estimated the unrecorded time for each class member is 36.43 hours in a two week pay-period. (D.E. 294-2 at 11.) Thus, Plaintiffs will present more than sufficient representative evidence to satisfy the established requirements.

### V. A Court Successfully Tried Similar Class Claims

The trial court's order denying Defendants' motion for post-trial relief in *Monroe* succinctly explains how Defendants' failure to maintain accurate time records invokes the judicially-sanctioned remedy for representative evidence on damages. In rejecting Defendants' argument that damages must be calculated with precision through expert testimony, the *Monroe* court held:

> Clearly, the record contains sufficient evidence, when viewed in the light most favorable to the non-moving party, for a reasonable juror to determine damages. Defendants then contend that Plaintiffs must produce an expert damages report to establish damages. Defendants are mistaken, ***Plaintiffs need only establish the basis for a reasonable inference that they were due compensation they did not receive; once sufficient proof is in the record that employees were in fact due compensation, jurors may***

---

[9] Recognizing the *representative* and highly persuasive nature of Plaintiffs' GPS and expert evidence, Defendants have sought to preclude the jury from hearing this key evidence at trial. (D.E. 308; D.E. 336.)

15

> *draw a reasonable inference as to the extent of the damages. Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946). This policy incentivizes employers to maintain just the type of "meticulous" records that Defendants have claimed existed in the instant case. Such records should provide a sufficient basis of damages; to the extent they do not, jurors are free to award "approximate" damages so long as there is a basis for a reasonable inference. *Id.*

Exhibit C, February 22, 2012 Order denying Defendants' Motion for Judgment as a Matter of Law in *Monroe* at 2-3 (emphasis added).

Rejecting Defendants' objection to the size of the statistical sampling used to establish liability, the court held:

> Here, Defendants do not dispute that evidence of eighteen employees was entered into the record. Rather, Defendants argue that the absence of testimony from 280 other employees establishes Plaintiffs failure to meet their burden. Defendants contend that eighteen employees is an insufficient sample size to establish the damages of the other 280 employees. *Again, the Defendants are mistaken. Like Anderson, Reich, & Donovan show, courts may allow a sample of employees to testify in order to prove an FLSA violation. Here, a sample sufficient for the jury to make a reasonable inference existed. See Anderson,* 328 U.S. at 687-88.
>
> \*\*\*
>
> Here, the evidence put on by the Plaintiff was sufficient that a reasonable juror could conclude a violation existed. Specifically, Plaintiff's introduced evidence at least sufficient to show a violation as it relates to eighteen employees as recognized in the Defendants motion. *From this a juror may reasonably infer a systematic practice by the Defendant of not paying their employees the overtime they were due.* Such reasonable inferences are of course subject to rebuttal by the Defendant. That just such an inference exists, though, is sufficient to defeat the Defendants motion here.

*Id.* at 2-3.

## CONCLUSION

Defendants' latest motion to reconsider decertification on the eve of trial presents nothing new. Similar cases have been tried successfully. Defendants' continued desire to delay paying its employees what they are due cannot provide grounds to further delay

trial. Justice delayed is justice denied. Defendants' issues have been rejected at class certification (D.E. 40, Dec. 30, 2008); on Rule 23(f) appeal (D.E. 68, Mar. 27, 2009); denying Motion to Reconsider (D.E. 82, June 29, 2009); and denying Motion to Decertification (D.E. 212, October 4, 2010). Defendants' instant attempt should be likewise denied.

                                        Respectfully submitted,

Dated: March 21, 2013               /s/ *James B. Zouras*
                                                     One of Plaintiffs' counsel

| | |
|---|---|
| Ryan F. Stephan | Jac A. Cotiguala |
| James B. Zouras | Brian D. Massatt |
| STEPHAN ZOURAS, LLP | JAC A. COTIGUALA & ASSOCIATES |
| 205 North Michigan Avenue, Suite 2560 | 431 South Dearborn Street, Suite 606 |
| Chicago, IL 60601 | Chicago, IL 60605 |
| Telephone: (312) 233-1550 | Telephone: (312) 939-2100 |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO RECONSIDER ORDER DENYNG MOTION FOR DECERTIFICATION was served upon the following parties via this Court's ECF filing system, this 21st day of March, 2013:

Colin D. Dougherty
Jonathan D. Christman
Fox Rothschild LLP
10 Sentry Parkway, Suite 200
P.O. Box 3001
Blue Bell, PA 19422-3001

Jason S. Dubner
Ursula A. Taylor
Butler Rubin Salterelli & Boyd LLP
70 West Madison Street
Suite 1800
Chicago, IL 60602

**Attorneys for Defendants**

/s/ *James B. Zouras*
James B. Zouras