UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LASHON JACKS, MORRIE BELL, and ERRICK RHODES, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DIRECTSAT USA, LLC, UNITED USA, LLC, JAY HEABERLIN, LLOYD RIDDLE, and DAN YANNANTUONO, <br><br> Defendants. | Case No. 10 CV 1707 <br><br> Judge Joan B. Gottschall |

## MEMORANDUM OPINION & ORDER

Plaintiffs Lashon Jacks, Morrie Bell, and Errick Rhodes ("named Plaintiffs") sued Defendants DirectSat USA, LLC; its parent company Unitek USA, LLC; and DirectSat executives Jay Heaberlin, Lloyd Riddle, and Dan Yannantuono (collectively "DirectSat") for alleged violations of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (2000). Plaintiffs now move for class certification of their state-law claims. The court finds that the proposed class meets the requirements of Federal Rule of Civil Procedure 23 and grants the motion.

### I. BACKGROUND

This case is highly similar to a case filed in the Northern District of Illinois in 2008 by other DirectSat technicians asserting claims under the IMWL. In that case, Judge St. Eve certified a class including technicians employed by DirectSat between



December 3, 2006, and June 11, 2008. *Farmer v. DirectSat USA, LLC*, 08-cv-3962, ECF No. 40 (N.D. Ill. Dec. 30, 2008). Judge St. Eve later denied a motion to decertify the class. *Farmer v. DirectSat USA, LLC*, 08-cv-3962, ECF No. 212 (N.D. Ill. October 4, 2010).[1]

The complaint in this case is nearly identical to that in *Farmer*. It alleges that DirectSat and its parent corporation UniTek, both headquartered in Pennsylvania, are in the business of installing and servicing satellite dishes in the state of Illinois and have numerous offices throughout the state. (Notice of Removal Ex. A (Compl.) ¶¶ 5-6, ECF No.1.) DirectSat employed the named Plaintiffs as hourly non-exempt service technicians, responsible for installing and servicing residential satellite dishes. (*Id.* at ¶¶ 1-3.) Plaintiffs were paid an hourly rate based on their productivity, which was calculated using the number of jobs they completed on a weekly basis and the number of hours they reported on their time sheets. Each day, Plaintiffs were provided with work orders and then traveled to customers' homes to complete the orders. (*Id.* at ¶¶ 11-13.)

Plaintiffs allege that they were obligated by DirectSat to record less time on their weekly time sheets, including overtime, than they actually worked. Some of the unrecorded time was spent traveling to and from work sites. (*Id.* at ¶¶ 14.) Plaintiffs allege that they performed additional unpaid "off-the-clock" work completing various

---

[1] Judge St. Eve declined to accept reassignment of this case, finding that it would delay *Farmer*. *Farmer v. DirectSat*, 08-cv-3962, ECF No. 146 (N.D. Ill. March 23, 2010). A third case involving the same defendant, *Bennett v. DirectSat USA, LLC, et al.*, 10-cv-4968, is currently pending before Judge Leinenweber. In that case, the plaintiffs have withdrawn their motion for class certification and are proceeding on their individual IMWL and FLSA claims. The court is also aware of another case brought in the Western District of Wisconsin by DirectSat technicians asserting an FLSA collective action and class-action wage claims under three state laws. *Espenscheid v. DirectSat USA, LLC*, 2011 WL 2009967 (W.D. Wis. May 23, 2011). The Wisconsin case includes 12 subclasses and a total of 2300 plaintiffs. The plaintiffs had proposed presenting at trial the testimony of 43 technicians to allow the jury to determine an "average" number of uncompensated hours, but the judge found this plan to be susceptible to gross error, and the class was decertified on the eve of trial. The case has been stayed pending an interlocutory appeal of the decertification decision to the Seventh Circuit.

2

tasks that DirectSat required of its technicians. These tasks included receiving work orders at home, planning service routes, preparing satellite dishes, loading and unloading service vehicles, inventorying equipment, cleaning and maintaining the vehicles, completing paperwork, and attending weekly meetings. (*Id.* at ¶¶ 15-16.) They claim that Defendants "willfully encouraged their technicians" to work off the clock and that they "routinely worked more than 40 hours per week" without receiving pay for all the overtime actually worked. (*Id.* at ¶¶ 17-18.) Plaintiffs claim that the underreporting of their time resulted from DirectSat's "uniform policies and practices." (*Id.* at ¶ 20.)

In support of their motion to certify the class, Plaintiffs submit the declarations of named Plaintiffs Jacks, Bell, and Rhodes; various DirectSat company policies covering customer communications, vehicle use, and the reporting of hours; excerpts from the depositions of DirectSat executives Haeberlin and Yannantuono; and emails from DirectSat's corporate office. (*See* Pls.' Mot. Class Certification (Exhibits), ECF Nos. 24, 28; Pls.' Reply Br. (Exhibits), ECF No. 50.) Defendants' Brief in Opposition to Class Certification relies on DirectSat's employee handbooks and policies, pay records, and the deposition testimony of the named Plaintiffs. (*See* Defs.' Br. Opp. Class Certification (Exhibits), ECF No. 38.)

Plaintiffs ask the court to certify a class defined as:

All individuals who were employed or are currently employed by one or more of the Defendants, their subsidiaries or affiliated companies, in the state of Illinois as technicians or other similarly titled positions at any time from June 12, 2008 to the present.

(Pls.' Mot. for Class Certification 2, ECF No. 23.)

3

## II. LEGAL STANDARD FOR CLASS CERTIFICATION

Federal Rule of Civil Procedure 23 allows class certification when the proposed class satisfies all of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Wal-Mart, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541, 2548 (2011). The court need not accept the allegations in the complaint as true. *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). Under *Wal-Mart*, the party seeking class certification must demonstrate with proof, at the class-certification stage, that the requirements of Rule 23 are satisfied. The court is to engage in a "rigorous analysis" that touches on the merits of the underlying claim. *Id.* at 2551-52.

Rule 23(a) lists as prerequisites for certification "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *Wal-Mart*, 131 S. Ct. at 2548. These four requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart*, 131 S. Ct. at 2550 (internal quotation marks omitted).

Plaintiffs request certification pursuant to Rule 23(b)(3), which applies when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and [when] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Relevant to this inquiry are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of

4

any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

### III. ANALYSIS

**A. Rule 23(a)**

Defendants argue that the class proposed by Plaintiffs fails to meet the requirements of Rule 23(a) because the evidence presented in support of class certification does not show that a uniform policy existed that forced technicians to underreport their hours, or that it affected the putative class in a typical manner. (Defs.' Br. Opp. Class Certification 3-6, ECF No. 38.) Defendants also argue that because Plaintiffs have submitted with their motion only three declarations from technicians who worked in DirectSat's Bedford Park office, they offer insufficient proof to justify certification of a state-wide class. (*Id.* at 2-3.) The court considers each Rule 23(a) requirement in turn.

1. Numerosity

Rule 24(a)(1) requires that the proposed class be large enough to make joinder impracticable. Plaintiffs' complaint asserts that over 40 technicians were subjected to DirectSat's allegedly unlawful policies. The evidence submitted supports this. Although Plaintiffs provide declarations from only three technicians, Jacks's declaration reports that he worked with at least 50 other technicians, while Bell and Rhodes report that they worked with 100 other technicians. (Pls.' Mot. Class Certification Ex. I (Jacks Decl.), J (Bell Decl.), & K (Rhodes Decl.), ECF Nos. 24, 28.) Plaintiffs also submit a list of Illinois technicians whose vehicles were tracked by DirectSat's GPS system during the

5

week of November 7, 2009, and that list shows that there were at least 80 technicians in DirectSat's Bedford Park, Bolingbrook and Algonquin Park offices. (Ex. M (Summary Doc.), ECF No. 24.) The court finds the size of the proposed class adequate to satisfy the numerosity requirement. *See Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 335 (N.D. Ill. 2006) ("[C]ourts in this circuit have concluded that 40 or more class members is generally sufficient to fulfill the numerosity requirement.").

2. Commonality

As the Supreme Court emphasized in *Wal-Mart*, the commonality inquiry focuses on whether a class-wide proceeding will "generate common *answers* apt to drive the resolution of the litigation." 131 S. Ct. at 2551. In this case, Plaintiffs allege a uniform, informal employment practice that originated from DirectSat's upper management and was applied to all DirectSat service technicians. *Cf. id.* at 2554-55 ("Respondents have not identified a common mode of exercising discretion that pervades the entire company."). The commonality requirement is similar to the predominance requirement of Rule 23(b)(3), but "the predominance criterion is far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). As Plaintiffs must prove not only commonality but predominance to prevail on their motion, the court will elaborate on the question of commonality as part of the Rule 23(b)(3) analysis.

3. Typicality

Typicality requires that the named Plaintiffs' claims be typical of those of the class at large, rather than premised on varying practices or diverging courses of conduct by Defendants. *See Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596-98 (7th Cir. 1993). Defendants argue that Plaintiffs fail to establish that DirectSat's policies

6

affected them in ways that were typical of the class as a whole. (Defs.' Br. Opp. Class Certification 11.)

The court finds that the claims of the named Plaintiffs and the proposed class arise from standardized practices by DirectSat that allegedly required technicians to perform off-the-clock work. The evidence submitted ties the alleged unrecorded time to company-wide policies. For example, DirectSat's "Cell Phone Policy" required technicians "to call their customers at the beginning of the day to acknowledge their appointment." (Ex. E, ECF No. 24.) The "Company Owned Vehicle Policy" required them to maintain and clean their vehicles and to unload them at the end of the day. (Ex. G, ECF No. 24.) In deposition testimony, a DirectSat executive stated that the company's policies were uniform for all technicians in Illinois, and that technicians' work days usually began "when they [got] to their first job" and ended when they completed their last job. (Reply Br. Ex. B (Dep. Daniel Yannantuono, Feb. 24, 2011) 49:16, ECF No. 50.) DirectSat's written policies confirm this. (Ex. L (Earning and Reporting Hours of Work Policy), ECF No. 24.) Wages of all Illinois technicians were calculated according to a standard "pay for performance" policy, which took into account the number of jobs completed and the number of hours worked, and technicians were warned that failing to meet productivity standards could result in termination of employment. (Defs.' Br. Opp. Mot. Class Certification Ex. A-2 (Handbook) 25, ECF No. 38.) Because Plaintiffs claim that these standardized policies forced them to work off the clock, and these policies were applied to all technicians in Illinois, the court concludes that the named Plaintiffs' claims are typical of those of the class members.

4. Adequacy

The adequacy requirement requires that the claims and interests of the named Plaintiffs not conflict with those of the class, that the class representatives have sufficient interest in the outcome of the case, and that class counsel are experienced and competent. *Retired Chicago Police Ass'n*, 7 F.3d at 598. Defendants' opposition brief does not challenge certification on this point. The court concludes that the requirement is met because the named Plaintiffs have participated actively in the case, class counsel has experience bringing class-action claims under the IMWL, and there is no indication that the interests of the named Plaintiffs are antagonistic to those of the other class members.

**B. Rule 23(b)(3)**

Under Rule 23(b)(3), the court may certify a class only if (1) questions of law or fact common to the class members predominate over questions affecting the class members individually, and (2) a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3).

1. Predominance

The Seventh Circuit recently explained the predominance requirement of 23(b)(3):

> Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication. Or, to put it another way, common questions can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class. If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question. Individual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be

8

> present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole.

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (internal citations, alterations, and quotation marks omitted). The more common issues predominate, the more desirable a class-action lawsuit will be. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004). The fact that individual assessment of damages will be necessary should plaintiffs prevail does not preclude a finding that common issues predominate. *See Wal-Mart*, 131 S. Ct. at 2558 (stating that it is "clear that individualized monetary claims belong in Rule 23(b)(3)").

Plaintiffs essentially allege that DirectSat's formal policies—which required certain tasks to be completed, defined technicians' work day as the time between when they arrived at their first job and the time they completed their last job, and compensated technicians based on their productivity—combined with informal policies that directed technicians to underreport their hours and not report certain types of work. The result was a common employment practice that forced technicians to underreport their time. The Seventh Circuit has commented on how a court should evaluate allegations of an illegal informal policy for purposes of class certification. In light of *Wal-Mart*, the policy must be a uniform policy established by top management, not the cumulative actions of local managers who were afforded discretion by higher-level management. *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 490 (7th Cir. 2012) (reversing district court and holding that class treatment was appropriate where Merrill Lynch's company policy of allowing brokers to form teams had an allegedly disparate impact on black brokers).

9

Defendants argue that common questions do not predominate in this case because Plaintiffs cannot demonstrate that the technicians in the proposed class, who worked in different offices for different supervisors, performed a common set of activities. A trial, they claim, would necessarily focus on what each individual did before and after work at his own discretion in response to DirectSat's policies, on how long particular technicians spent on different activities, and on which hours technicians elected to record. This evidence, according to Defendants, would not be class wide in nature.

The court believes, however, that this case presents common questions as to whether certain of DirectSat's top-level corporate policies were lawful under the IMWL. Those include whether, under Illinois law, the technicians should have been compensated for the time spent driving from home to their first customer site and driving home from their last job of the day, or whether—as defendants argue—the federal Employee Commuter Flexibility Act, 29 U.S.C. § 254(a)(2), renders this commuting time not compensable. *See, e.g., Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046, 1062 (9th Cir. 2010) (holding that commuting time in company vehicle was not compensable under the FLSA but that employee had a valid claim for compensation under California law); whether activities such as maintaining vehicles, receiving assignments, loading/unloading equipment, and calling customers should have been compensated when not performed between the start and finish of the work day as defined by DirectSat policies; and whether DirectSat effectively forced technicians to underreport hours by employing a compensation policy that tied hourly rates to technicians' productivity. These questions are common to all members of the putative class and do not depend on the discretionary

acts of local managers or the idiosyncratic behaviors of particular technicians. All technicians had the same job responsibilities and were subjected to the same policies.

At least some of the proof necessary for the class members to prevail also exists on a class-wide level. As evidence of unlawful policies, Plaintiffs offer the declarations of named plaintiffs Jacks, Rhodes, and Bell, along with copies of various company policies and deposition testimony from several DirectSat executives. All three named Plaintiffs claim that they performed similar off-the-clock work at home in the mornings and evenings, including loading and unloading vehicles, attending weekly meetings, planning routes, and assembling satellite dishes. They all allege that they were instructed not to report all of the hours they worked. Plaintiffs also submit GPS records showing the total time service vehicles in three Illinois offices were driven by 80 technicians during one week in 2009. (Reply Br. Ex.M (Summary).) The time each vehicle was in operation, in nearly all cases, far exceeds the number of hours reported on the time sheet of the technician driving it, although it is apparently impossible to tell from the GPS records the purpose for which a vehicle was being driven at any particular time. Plaintiffs also submit emails from DirectSat executives that suggest that top-level management at least suspected that technicians were underreporting hours. (Reply Br. Exs. E & F, ECF No. 50.)

Individual questions certainly exist as to how each technician responded to DirectSat's policies and the extent to which he or she actually performed off-the-clock work. For example, the named Plaintiffs planned their service routes at different times in the morning or evening, spent differing amounts of time performing activities like loading vehicles and assembling dishes, and claimed different amounts of overtime.

11

These disparities troubled the district court that decertified the *Espenscheid* class. *See* 2011 WL 2009967, at *5 ("Despite my findings at the certification stage that plaintiffs' claims were grounded primarily in defendants' uniform policies and practices, the evidence in the case suggests that proof of plaintiffs' claims depends on how individual technicians responded to the numerous policies and practices at issue in the case."). This court is not blind to the possibility that individual responses to standard policies could vary widely in this case.[2] But the Seventh Circuit explained in *McReynolds* that class treatment does not require that all class members have been equally affected by the challenged practices—it suffices that the issue of whether the practice itself was unlawful is common to all:

> Each class member would have to prove that his compensation had been adversely affected by the corporate policies, and by how much. So should the claim of disparate impact prevail in the class-wide proceeding, hundreds of separate trials may be necessary to determine which class members were actually adversely affected by one or both of the practices and if so what loss each class member sustained—and remember that the class has 700 members. But at least it wouldn't be necessary in each of those trials to determine whether the challenged practices were unlawful. Rule 23(c)(4) provides that "when appropriate, an action may be brought or maintained as a class action with respect to particular issues." The practices challenged in this case present a pair of issues that can most efficiently be determined on a class-wide basis.

672 F.3d at 490-91. The court believes that the relationship between the unlawful policies in the case and the way in which they affected the individual class members is sufficiently similar to that approved by the Seventh Circuit in *McReynolds* to justify class treatment.

---

[2] The court also notes, however, that *Espenscheid*'s class of over 2,000 technicians from three states asserting collective claims under the FLSA and three different state laws was much more unwieldy than the class proposed by Plaintiffs.

12

2. Superiority

Defendants argue that Plaintiffs' class action fails the superiority requirement because it seeks to circumvent the FLSA, which requires plaintiffs who pursue a federal collective action for unpaid wages to opt in to the class. The Seventh Circuit, however, has held that even where plaintiffs bring a state-law class action and an FLSA collective action in a "combined" action, the state-law class action may meet the superiority requirement of 23(b)(3). *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 973-74 (7th Cir. 2011) ("Nothing in the text of the FLSA or the procedures established by the statute suggests either that the FLSA was intended generally to oust other ordinary procedures used in federal court or that class actions in particular could not be combined with an FLSA proceeding."). Plaintiffs here make only individual FLSA claims, rather than asserting an FLSA collective action. In light of *Ervin*, Defendants' argument that the possibility of pursuing a collective action under the FLSA undermines the superiority of the state-law class action is unavailing. *See Butler v. Am. Cable & Tel., LLC*, 2011 WL 4729789 (N.D. Ill. Oct. 6, 2011) (unreported) ("Here, despite the presence of parallel FLSA claims, we also find that the superiority element is satisfied.")

The court also considers the Rule 23(b)(3) factors in evaluating superiority: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

The court acknowledges the existence of other litigation by putative class members, including the *Bennett* case. But those individuals are free to opt out of this action and pursue their claims individually. The court believes that most individual DirectSat technicians would find it difficult to recover if required to bring individual actions, given that the cost of litigation would outweigh the damages they would likely recover. *See Curry v. Kraft Foods Global, Inc.*, No. 10 CV 1288, 2011 WL 4036129, at *7 (N.D. Ill. Sept. 12, 2011) ("Deciding each claim separately would be an extremely inefficient use of both judicial and party resources, and many individual class members would otherwise be unlikely to bring their claims."). A class action will allow recovery for more individuals and prevent a proliferation of individual actions from burdening other courts.

**C. Class Definition**

The court finds it necessary to alter the Plaintiffs' proposed class definition in two respects. First, the class as proposed would include "[a]ll individuals who were employed or are currently employed by one or more of the Defendants, their subsidiaries or affiliated companies." The *Farmer* court redefined the proposed class to exclude DirectSat affiliates, as no evidence was presented to link the affiliates to the policies challenged. *See Farmer*, 08-cv-3962, ECF No. 40, at *3. In this case, too, the allegations and the declarations of the named Plaintiffs reference only DirectSat. The court therefore redefines the proposed class to exclude "subsidiaries and affiliated companies."

Second, Plaintiffs do not provide a definite end date for the proposed class period. The court will therefore replace "to the present" with the date the complaint was filed:

14

February 9, 2010. *See id.* (adopting the date the complaint was filed as the end date for the class period).

## IV. CONCLUSION

Plaintiffs' motion to certify a class is granted. The following class is certified: "All individuals who were employed or are currently employed by DirectSat in the state of Illinois as technicians or in other similarly titled positions at any time between June 12, 2008, and February 9, 2010." The court appoints the named Plaintiffs as class representatives and appoints their counsel as class counsel.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: June 19, 2012