IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GERALD FARMER, *et al.*, | |
| Plaintiffs, | CIVIL ACTION |
| v. | No. 08-cv-3962 |
| DIRECTSAT USA, LLC, *et al.*, | JUDGE JOHN Z. LEE |
| Defendants. | |

**DEFENDANTS' REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DECERTIFY THE CLASS**

**FOX ROTHSCHILD LLP**
Colin D. Dougherty
Jonathan D. Christman
Fox Rothschild LLP
10 Sentry Parkway, Suite 200
P.O. Box 3001
Blue Bell, PA 19422-3001
(610) 397-6500

**BUTLER RUBIN SALTARELLI & BOYD LLP**
Jason S. Dubner (ARDC # 06257055)
Ursula A. Taylor (ARDC # 6287522)
70 West Madison Street, Suite 1800
Chicago, IL 60602
(312) 444-9660

*Attorneys for Defendants*

**I.     INTRODUCTION**

In opposing decertification, Plaintiffs choose to ignore the unmistakable applicability of the Seventh Circuit's precedential decision in Espenscheid v. DirectSat USA, LLC, 705 F.3d 770 (7th Cir. 2013), a case involving many of the same plaintiffs, the same class period, the same defendants, and, in Plaintiffs' own words, substantially the same issues, claims, and defenses. Instead, to avoid decertification based upon this binding and controlling authority, Plaintiffs now rely upon other court decisions (many of which are from outside this Circuit) that predate (in some cases by several years) the Seventh Circuit's ruling in Espenscheid, in an effort to claim that Espenscheid is not directly on point. However, the Plaintiffs cannot escape the decertification mandated by Espenscheid in the case at bar – a result that is only further demonstrated by this Court's Daubert ruling striking the Plaintiffs' proposed damages expert.

**II.     REPLY ARGUMENT**

    **A.     Plaintiffs Cannot Evade the Seventh Circuit's Precedential Decision in *Espenscheid* That Mandates Decertification of the Instant Class.**

Critically, Plaintiffs do not contest (and therefore admit) that Espenscheid and Farmer involve allegedly unpaid wage claims by many of the **same plaintiffs** paid pursuant to the **same piece rate compensation system** against the **same defendants** during the **same class period**. Moreover, Plaintiffs do not contest (and therefore admit) that all of the factors complicating (and preventing) a class-wide adjudication of damages in Espenscheid also exist here.

Despite these foregoing concessions, Plaintiffs feign that the Seventh Circuit's decision in Espenscheid is of no consequence regarding the facts and law governing this case. On its face, Plaintiffs' empty assertions to that effect are not only devoid of any factual, legal or logical merit; they are blatantly incongruous with Plaintiffs' regular and routine citation to the Espenscheid case during this litigation – that is, of course, until that case was decertified. (See

1

D.E. 189 at 2, n.2 (referring to the Espenscheid case as "a nationwide collective action brought to redress *the same uniform wage violations as Plaintiffs*") (filed July 28, 2010)); (D.E. 191 at 4 (referring to Espenscheid as "a similar case") (filed July 29, 2010)); (D.E. 238 at 1 (discussing the "similar Espenscheid v. Direct Sat [*sic*] case") (filed Jan. 24, 2011)); (D.E. 247 at 2 ("The Espenscheid action likewise involves *substantially the same parties, issues, claims and defenses*.") (filed Mar. 8, 2011)).[1] But, now, Plaintiffs clamor that there are "significant," "glaring," and a "myriad" of differences between the two cases. (See D.E. 372 at 2, 12, 14.) Of course, in light of their prior, repeated representations to the contrary, as well as Plaintiffs' significant admissions, supra, their present contentions ring hollow. Moreover, now that this Court has struck the Plaintiffs' proposed damages expert (see D.E. 373 and 374), the case at bar is postured identically to the to Espenscheid case when that Court entered the order decertifying a class of DirectSat technicians.

Notwithstanding the obvious applicability of Espenscheid to this case, in several instances, Plaintiffs erroneously try to dismiss the Seventh Circuit ruling by arguing that Espenscheid involved "12 subclasses" of DirectSat technicians with differing wage laws from the case at bar. (See D.E. 372 at 1, 12, 14.) However, the complicating factors causing decertification in Espenscheid were not the creation of subclasses, but instead, the Espenscheid plaintiffs' rejection of said subclasses and their intent to proceed as "one class" of DirectSat technicians without showing the testimony of 42 "representatives" to be, in fact, representative and, even if that hurdle could be overcome, the individualized inquiries for both damages and defenses. In a similar "all or nothing" approach, the Plaintiffs, as shown by their trial plan and

---

[1] Moreover, in several instances, Plaintiffs rebuked Defendants for failing to mention the Espenscheid case. (See D.E. 189 at 2, n.2 ("Though Defendants are represented by the same defense counsel, they neglected to mention [Espenscheid] in their lengthy discussion of other FLSA actions."); D.E. 191 at 5, n.2 ("There does not appear to be any legitimate excuse for Defendants' failure to cite to the Espenscheid decisions here.").

opposition brief, insist upon proceeding as a "single class action," of more than 500 technicians based upon the "unrepresentative representative" testimony, Espenscheid, 705 F.3d at 776, of eight technicians. (See D.E. 372 at 4.) As such, rather than a point of distinction, Plaintiffs have highlighted, again, why the Espenscheid decision governs this case and compels decertification.

Moreover, although Espenscheid involved a nationwide collective action and Rule 23 state law classes from three states, Defendants provided significant case law from Seventh Circuit and Illinois courts establishing that the Plaintiffs' wage claims under the IMWL parallel the FLSA and that the same analysis applies to both statutes. (See D.E. 371 at 20-21.) Plaintiffs provide no legal authority to suggest otherwise. Therefore, the fact that Espenscheid did not specifically involve unpaid wage claims under Illinois law, as involved here, is a distinction without a difference because Espenscheid involved FLSA claims and state wage laws that, similar to the IMWL, "parallel" the FLSA.[2]

As another point of alleged distinction, Plaintiffs also contend that, in contrast to the Espenscheid plaintiffs, they have provided a "more focused" and "more robust" trial plan for this class action that "goes beyond what is required" and has "repeatedly [been] found" by this Court to be "manageable." (See D.E. 372 at 2, 4, 10, 12-14.) As an initial matter, Plaintiffs fail to cite, nor can they, any decision of this Court approving their trial plan. Moreover, the expert testimony purportedly supporting their "more robust" trial plan has been stricken by this Court. (See D.E. 373 and 374.) Also, contrary to Plaintiffs' suggestion, they have set forth no proof establishing that the testimony from eight handpicked class members (two of whom were

---

[2] Moreover, in discussing the claims at issue in Espenscheid, Plaintiffs conspicuously ignore that one of the theories of liability in Espenscheid consisted of the same "outside the window" claims that appear to constitute the only "legal theory" advanced by all of the Plaintiffs – that they had to perform, allegedly without compensation, specific tasks "before arriving at their first job and after leaving the last job of the workday" (D.E. 372 at 7). See Espenscheid, 705 F.3d at 775 (identifying four of the subclasses (i.e., one for the FLSA claim, and one for each state law claim) as "plaintiffs who were denied overtime because they were not compensated for work performed before their first installation or service job or the day or after their last installation or service job of the day").

3

Espenscheid plaintiffs) is "genuinely representative evidence" of the remaining approximately 500 class members. See Espenscheid, 705 F.3d at 774-75; (see also D.E. 374 at 10-11.)

### B.    Plaintiffs' Other Case Citations Are Misplaced.

Plaintiffs outright (and incorrectly) dismiss Espenscheid, a case involving many of the same plaintiffs, the same defendants, the same piece rate compensation system, the same class period, and the same procedural posture, as mere "dicta" and providing "no new law." (See D.E. 372 at 1, 4.) But, at the same time, Plaintiffs assert that other Seventh Circuit authority decided **before** Espenscheid is binding and controlling precedent here. Beyond simply misstating the holdings of these cases, however, Plaintiffs reliance upon these cases (none of which involve a class of employees paid pursuant to a piece rate compensation system) is severely misplaced.

Plaintiffs' citation to Alvarez v. City of Chicago, 605 F.3d 445 (7th Cir. 2010), as support for the use of bifurcation and subclasses, is a misnomer. Unlike the paramedic plaintiffs in Alvarez who argued for the creation of homogenous subclasses, 605 F.3d at 446, 449, Plaintiffs have never proffered any subclasses and instead maintain to this day that they are proceeding as a "single class." (See D.E. 372 at 4.) Moreover, although Plaintiffs' counsel was also counsel in Alvarez, they fail to mention to this Court that in Alvarez, the "calculation of each plaintiff's award (if any) will be largely mechanical," 605 F.3d at 450, in comparison to cases where, as in the case at bar, "[n]othing like that is possible here," see Espenscheid, 705 F.3d at 773.[3]

Additionally, the Seventh Circuit's decision in Ross v. RBS Citizens, N.A., 667 F.3d 900 (7th Cir. 2012), a case involving overtime claims brought by bank tellers and branch managers,

---

[3] Further, Arreola v. Godinez, 546 F.3d 788 (7th Cir. 2008), cited by Plaintiffs in a footnote for the proposition that individual damages determinations do not defeat decertification, fails to advance Plaintiffs' position. In Arreola, an inmate sought to represent a class of prisoners allegedly injured by a jail's policy of restricting the use of crutches. Id. at 790. Thus, unlike here, no unpaid wage claims were at issue and, as a result, the court did not consider the variance and complicating factors inherent to a piece rate system recognized in Espenscheid, 705 F.3d at 774-75, and equally present here. There was also no discussion of "representative" proof or the requirements of predominance and superiority. See Arreola, 546 F.3d at 799-800.

4

provides no support for defeating decertification. Contrary to Plaintiffs' suggestion, the Seventh Circuit made no specific finding on the representative nature of more than one hundred declarations submitted in connection with a motion for class certification. Instead, Ross addressed two items: (1) the "very narrow issue" of whether the certification order satisfied the requirements of Rule 23(c)(1)(B), which is not at issue here; and (2) whether the certified classes satisfied the Rule 23(a) requirement of commonality after the Supreme Court's decision in Wal-Mart v. Dukes, 131 S.Ct. 2541 (2011). Ross, 667 F.3d at 904. Accordingly, in Ross, the court was merely reviewing a class certification order at an earlier stage of litigation, and the court did not consider the more stringent and "far more demanding" Rule 23(b)(3) requirements of predominance and superiority. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24 (1997).

  Similarly, in McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 672 F.3d 482 (7th Cir. 2012), a discrimination case involving financial brokers, the Seventh Circuit did not consider the Rule 23(b)(3) requirements of predominance or superiority—for the simple reason that the class certification order being reviewed in that case was entered under Rule 23(b)(2), which does not contain those requirements. Accordingly, none of these foregoing cases suggest, let alone dictate, a result in the case at bar that differs from Espenscheid. Like Espenscheid, the Farmer plaintiffs have failed to show that their proof is actually representative and, even if "by pure happenstance" it is (which Defendants vehemently contest), the Farmer case involves the same variances and individualized inquiries prohibiting a class-wide assessment of damages. See Espenscheid, 705 F.3d at 774-75; (see also D.E. 371 at 27-33.)

  Furthermore, Plaintiffs dedicate several pages of their opposition to Judge Gottschall's order granting class certification in Jacks v. DirectSat USA, LLC, No. 10-1707, 2012 WL

5

2374444, (N.D. Ill. June 19, 2012). But, as is patently obvious, that order in <u>Jacks</u> was issued approximately **eight months before** the Seventh Circuit rendered its decision in <u>Espenscheid</u>, affirming the decertification of a class of DirectSat technicians. For that reason alone, reliance upon that <u>Jacks</u> decision is misguided. Also, <u>Jacks</u> was decided at the certification stage, before any class discovery had taken place and before any expert discovery or the submission of trial plans. Thus, when Judge Gottschall issued her ruling at that earlier stage of litigation, she was considering only the non-binding decision of another district court. In contrast, this Court must instead apply the binding and controlling authority of the Seventh Circuit in that same matter.

Finally, Plaintiffs' citation to the Western District of Tennessee case of <u>Monroe, et al., v. FTS USA, LLC, et al.</u>, No. 08-2100 (W.D. Tenn.), is also mistaken. Despite identifying <u>Monroe</u> as a "similar" action involving "similar class claims," (see D.E. 372 at 10 & n.6, 15-16), Plaintiffs fail to inform this Court that Judge St. Eve rejected their reliance upon <u>Monroe</u> when she denied their motion for reconsideration of summary judgment rulings because that case involved different plaintiffs. (<u>See</u> D.E. 282.) In contrast, Plaintiffs do not contest that at least 58 technicians in the class at bar were plaintiffs in <u>Espenscheid</u> and said plaintiffs have alleged "off the clock" wage claims against the same employer, DirectSat, in the same Circuit. Moreover, similar to the <u>Espenscheid</u> plaintiffs, the <u>Farmer</u> plaintiffs have failed to demonstrate, as they must in this Circuit, how their eight "representatives" are actually representative of the remaining approximately 500 class members. See <u>Espenscheid</u>, 705 F.3d at 774. They have no expert (<u>see</u> D.E. 373 and 374) and no support for their assertion that their proof is representative.[4]

---

[4] In addition to the foregoing cases, Plaintiffs spend six pages rehashing Judge St. Eve's October 4, 2010 class certification ruling. (See D.E. 372 at 5-10.) Critically, Judge St. Eve's decision was made **before** the Seventh Circuit decided <u>Espenscheid</u> (and even before the district court's decertification order), **before** the Supreme Court decided <u>Wal-Mart</u>, **before** additional deposition testimony from Mr. Bodie and Mr. Myers, **before** the submission of trial plans, and **before** the Plaintiffs' proposed damages expert was struck by this Court.

6

### C. This Court's Order Striking Plaintiffs' Proposed Damages Expert Further Solidifies The Need For Decertification of the Instant Class of DirectSat Technicians.

On March 29, 2013, this Court granted Defendants' Daubert motion and struck Plaintiffs' proposed expert, Gerald A. Becker (see D.E. 373 and 374), whose unqualified testimony and unreliable methodology Plaintiffs relied upon extensively and repeatedly in their opposition brief to stave off decertification. (See D.E. 372 at 2, 4, 6-8, 12, 14-15.) Specifically, Plaintiffs contended that the "speculative issues regarding damages" are "managed in this case" through the use of the "***highly-qualified*** expert testimony" of their proposed damages expert. (Id. at 2, 7 (emphasis added).) Plaintiffs' contentions that the proposed testimony of Mr. Becker would "present more than sufficient representative evidence" to establish class-wide damages (see id. at 15), were specious and unfounded before this Court's Daubert ruling. Now, in light of that ruling, Plaintiffs' reliance upon that precluded testimony is negated. As a result, Plaintiffs have only "evidence of the experience of a small, unrepresentative" sample of eight DirectSat technicians to establish liability and damages for a class of more than 500 technicians, which is prohibited under the governing law of this Circuit. See Espenscheid, 705 F.3d at 775.

                Respectfully submitted,

                /s/ Colin D. Dougherty
                COLIN D. DOUGHERTY
DATED: March 25, 2013      *One of the Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Colin D. Dougherty, hereby certify that, on this date, I caused the foregoing document to be filed electronically with this Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document, upon the following:

>Jac A. Cotiguala, Esquire
>Brian D. Massatt, Esquire
>Jac A. Cotiguala & Associates
>431 South Dearborn Street, Suite 606
>Chicago, IL 60605
>
>Ryan F. Stephan, Esquire
>James Zouras, Esquire
>Andrew C. Ficzko, Esquire
>Stephan Zouras, LLP
>205 North Michigan Avenue, Suite 2560
>Chicago, IL 60601
>
>Attorneys for Plaintiffs

>/s/ Colin D. Dougherty
>COLIN D. DOUGHERTY

DATED: March 25, 2013